# ATTACHMENT L

## Wolfe Memoranda Ordering Internal SCI-Cambridge Springs Investigations

# CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
September 15, 1994

SUBJECT:   **Request for an Investigation**

TO:      Lt. Roger Beck

FROM:    William J. Wolfe
         Superintendent

On this date, Deputy Utz notified me by telephone that he received information that three (3) inmates observed Mr. Walton in a walking cooler with another inmate and his pants zipper was down. The inmates conveyed this information to Ms. Appleby. According to the information I received, the inmates denied observing any improper conduct or physical contact.

Please follow up on this information and provide a written report to my office on your findings.

WJW:jfh

cc: File



#5    Folder #21
Merry, James (COII)
November 1994

Commonwealth of Pennsylvania
SCI-Cambridge Springs
December 5, 1994

**CONFIDENTIAL**
**For Your Eyes Only**

**SUBJECT:**    Request for Investigation

**TO:**    Captain Bartlett

*W. J. Wolfe*

**FROM:**    William J. Wolfe
Superintendent

Please find attached a note from Vaughn Davis and a memo from Michael Wolanin dated November 7, 1994. The memo is self explanatory, therefore, I am directing you to initiate an investigation into these alleged violations of the Code of Ethics.

Please keep me informed as to your progress in this matter.

cc: Vaughn Davis
Confidential File



*Commonwealth of Pennsylvania*
*Department of Corrections*
*Special Investigations Office*

11/8/94

**FROM THE DESK OF:**

**VAUGHN L. DAVIS,** *Director*
*Special Investigations Office*

Bill

These names were given to Investigator Wlamn while conducting an unrelated case at CBS recently.

I am referring them to your attention for whatever action you think appropriate.

Thanks

V

COMMONWEALTH OF PENNSYLVANIA
Pennsylvania Department of Corrections
November 7, 1994

SUBJECT:    Violation of Code of Ethics

TO:    Vaughn L. Davis
Director
Special Investigations

FROM:    Michael Wolanin
Special Investigator
Special Investigations

On November 2, 1994 while interviewing an inmate in an unrelated case.    The following information was provided to me regarding staff and inmate relationships.

Sgt. James Merry involved with inmate Elizabeth Masonette.

Maintenance Employee Marty Miller involved with inmate Jolanda White.

Maintenance employee Ronald Randolph involved with an unnamed inmate.

RECEIVED
NOV 1 6 1994

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
December 30, 1994

SUBJECT:    STAFF INVESTIGATIONS

TO:         WILLIAM J. WOLFE
            SUPERINTENDENT

FROM:       *Keith R. Bartlett, Capt.*
            KEITH R. BARTLETT
            INTELLIGENCE CAPTAIN

Per your memo 'Request for Investigation' dated December 05, 1994, the following report is
submitted.

1.    The investigation on Sergeant Merry has been started and I am awaiting evidence from the
      phone company before further action can be taken. I will keep you advised.

2.    On December 30, 1994, I spoke to Mr. Ron Randolph regarding reports of sexual contact
      with an unknown inmate. I advised him that this was an official investigation and it is his
      duty to cooperate.

      Mr. Randolph denies any wrong doing and states he has never touched an inmate.
      Considering there are no other witnesses to this case, there is no other evidence to justify
      further investigation. I did caution Mr. Randolph and told him to be careful not to be out
      of line with his work crew, not to get too close to them, and to avoid being overly friendly
      with them.

      I recommend terminating this investigation.

3.    On December 30, 1994, I also spoke to Mr. Marty Miller and inmate J. White-OC3674, in
      regards to sexual contact allegations. I gave both parties their Miranda Rights and advised
      Mr. Miller of his duty under the Code of Ethics to cooperate with an investigation.

      Inmate White denies any sexual contact. She admits that they joke around and that Mr.
      Miller pats them (the whole crew) on the back when they do a good job. Inmate White
      said she would like to be removed from his crew to avoid her name being brought up
      again.

      Mr. Miller denies any sexual contact and states he would be willing to take a polygraph
      test. He said he even refuses to go on jobs with only one inmate to avoid problems. He

EXHIBIT
**37**

admits to patting inmates on the back and joking with them.

I was very stern with Mr. Miller and reminded him that we had talked about him touching inmates before. I told him he is never to touch any inmate except in self defense. He said he understood this and he would correct this. I told him this was going in a written report to the Superintendent and he could be in serious trouble if his behavior does not change.

I advised Mr. Allen of the situation and he told me he had also spoken to Mr. Miller about inmate contact when he (Mr. Miller) first started.

I recommend this investigation be terminated with an official counseling session.

Lt. Beck was present for the interviews with Mr. Miller and inmate White.

Sir, if you have any further questions or concerns, please do not hesitate to contact me.

KRB/hs

CC:    Deputy Kormanic
        Mr. Vaughn Davis, Director SIO
        File    \D30



# CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
March 7, 1995

SUBJECT:  Request for Investigation

TO:       Captain Bartlett

FROM:     William J. Wolfe
          Superintendent

Based upon the information you recently provided to me regarding
an allegation that COT Hammers was observed by an unidentified
Corrections Officer Trainee engaging in a sexual act with an
unidentified inmate, I am hereby directing you to conduct a formal
investigation into this matter.

Please keep me updated on your progress.


WJW/jfh

cc: Superintendent's File

EXHIBIT
96
PENGAD Bayonne N.J.

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
May 22, 1995

## CONFIDENTIAL

**SUBJECT:  Authorization to Conduct an Investigation**

**TO:**      Captain Lazenby

*W. J. Wolfe*

**FROM:**    William J. Wolfe
             Superintendent

I am in receipt of an extraordinary occurrence report from Officer Metzger which contains numerous allegations made by Lisa Lambert regarding inappropriate physical contact between staff and inmates.  I am directing you to initiate a formal investigation into these allegations.

Please keep me appraised of your progress and findings.

cc:    File/metzger.595

WJW/cld

cc:

DC-121A

**DEPARTMENT OF CORRECTIONS EMPLOYEE**
**REPORT OF EXTRAORDINARY OCCURRENCE**

*Place — Landwriter*

To: Deputy Kormanic     Institution: SCI Cambridge Springs

From: T. Metzger     Date: on going

Title: Corrections Officer     Time: on going

Date: 05-06-95     Area: confidential

Signature: J. Metzner     Occurrence: report

---

**Inmates Involved:**
Name & DC No.

Lambert, L (086416)
(confidential source)

**Staff Involved:**
Name & Title

**Witnesses:**

---

**Actions Taken:** Reviewed. Previously brought to my attention and turned over to Deputy Kormanic + Chaplin Kennedy. Officer instructed to submit findings in writing as attached.

Lt. Foster

---

**Description of Incident, in detail: (Use other side if necessary):**

While I hold no opinion I feel these allegations should be brought to your attention so that all parties may be cleared of these alledged infractions.

(statement attached)

PENGAD Bayonne N.J.

EXHIBIT

125

The following parties were mentioned in these allegations:

C.O. 1 Eicher: allegedly had physical contact with inmate E. Jones (OA4123) in late Oct or early Nov 1993 during open rec at Currie hall.

C.O. 1 Eicher: allegedly had contact with E. Maysonet (C8470) and H. Maysonet (OB3187) in autumn 1993.

C.O. 1 Eicher: allegedly had contact with inmate P. Hoover (OA1731) in late 1993 in the field house at yard and basement of Currie hall.

C.O. 1 Eicher: alledgedly had contact with L. Lambert (OB641), October 10, 1994 upstairs Alliace hall during cremes & things; further episodes supposedly occured in Jan. 94 in the elevator in Currie hall; March 1994 in the music practice room in Currie hall, April 7th in fieldhouse at yard; in the currie hall 2nd Floor Bath Room during open rec.

C.O. II Montejo: alledgedly had physical contact in music practice room in Jan 1994 with inmate L. Lambert (OB641)

C.O. II Merry: alledgedly had contact with inmate C. Bynum (OB1864) in basement of Currie hall in late 1992 into 1993.

C.O. II Rodgers: alledgedly had contact with inmate L. Lambert (OB641) in music practice room in Jan 1994 with C.O. Eicher present

C.O. II Coffee: alledgedly had contact with M. Diaz in early 1994 while the asbestos abatement was occurring in Cellar 1.

C.O. I Free alledgedly had limited contact with inmate L. Jafka (CC 2743) in the weight room of the aerobics studio and music practice room in Summer of 1994.

Maint. W. Young alledgedly had contact with inmate L. Jafka (CC 2743) June - Aug. 1994 at work sites including Luter Boiler Room on a saturday. Supposedly an entact condom was lost on Luter 4 during on such occasion.

F.S.M. Stewart alledgedly had contact with inmate M. DiBello (OA4576) in dietary office. Supposedly brought gum and perfume as "gifts".

C.O. II Beck alledgedly had contact with inmate M. DiBello in chaplain ofc. in Currie hall in autumn of 1993.

C.O. I Schmidt alledgedly had contact with inmate L. Lambert (OB6416) in June 1994 - Oct 1994. Supposedly sent a letter at end of Jan 1994 into institution.

Pg. 2 of 2

## PART I
## INVESTIGATION


REASON FOR INVESTIGATION:_____

Initial Investigation ordered and authorized
by Sept.¹ Wolfe after reciept of information
That Marty Miller was sexually harassing inmates.

_____

_____

_____

Inmate(s) involved: Cullen DiGiovanni    0C5287
Robin Phillips    0C1674

Staff involved: Marty Miller

Date: March 25, 1956    TIME: 1300 hrs

Investigating Staff: Lt. Roger C Beck

Log Number:_____

REMARKS: Preliminary Findings and Report submitted to
Supt Wolfe / Copy to Capt. Lazinby. Mr Miller Suspended
3/25/56 at 1600hrs pending this investigation

file/Inv1

10

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
March 26, 1996

# CONFIDENTIAL

SUBJECT:  REPORT OF INVESTIGATION
MARTY MILLER

TO:        WILLIAM J. WOLFE
           SUPERINTENDENT

FROM:      LT. ROGER C. BECK, SR.

On March 25. 1996, I received a call from Mike Miller CFMM I that inmate Robin Phillips OC1674 had reported to him that her work supervisor, Marty Miller was sexually harassing her. As this writer is aware of several other previous complaints on Marty Miller, I advised that I would make Captain Lazenby aware of this situation upon his return.

Approximately fifteen (15) minutes later, Mike Miller once again contacted me by phone and stated that inmate Colleen Digiovanni OC5287, was in his office with another sexual harassment complaint on Marty Miller. I advised Mike Miller to contact Deputy Utz and provide him with this information for his determination of what plan of action to take. Deputy Utz then contacted this writer and stated that he had spoken to Superintendent Wolfe and that the Superintendent wanted an official investigation conducted at once to be done by Lt. Beck.

At 1340 hrs. on March 25, 1996, Lt. Beck called inmate Digiovanni OC5287 into his office. This inmate stated during oral questioning that on Friday, March 22, 1996, she was in her room in NWD-3, room #36 in the morning hours. Marty Miller was in her bathroom apparently doing some type of plumbing work. Digiovanni stated that Marty Miller began talking to her and "coming on" to her. She further stated that Marty Miller came close to her and intentionally touched her breast with his hand. When Mr. Miller saw that this action visibly upset her, he then gave her a hug because he said she looked like she needed one. Mr. Miller then seemed to hang around her room and told her that if she needed help in getting dressed to let him know. Digiovanni stated that from this point she requested inmate Ferguson watch her when she entered the bathroom because she was afraid of Miller. Digiovanni further stated that inmate Ferguson witnessed the touching incident.

On Monday, March 25, 1996, Digiovanni stated that Marty Miller was once again in her room and made more sexual statements to her. All this information is contained in a written statement obtained by Lt. Beck on March 25, 1996 by Digiovanni. Digiovanni was asked if she would be willing to submit to a polygraph test as to the truthfulness of her statement and allegations. Digiovanni stated to Lt. Beck that she would be willing to do this if requested.

GR EXHIBIT
71
PENGAD Bayonne NJ

On March 25, 1996, at 1445 hrs., I interviewed Robin Phillips OC1674 in my office. Phillips indicated that she has a big problem with her work supervisor, Marty Miller. Phillips stated that she reported incidents of fondling and sexual comments to Mike Miller, who referred her to Lt. Beck. Phillips, upon questioning, revealed that Marty Miller has felt her breasts on several occasions, and, even after Phillips told him to stop doing this, he continued. He has also made sexual comments repeatedly to her, as indicated in her written statement. Another alleged incident took place in a housing unit involving Marty Miller showing inmate Phillips his penis and asking her if she wanted to touch it. Phillips also stated that Mr. Miller wanted to give her money and would "take care" of her after she got out. All of the above information is contained in Phillips' written statement. Phillips also stated she would be willing to take a polygraph test as to her truthfulness.

Based on the information thus far, Lt. Beck met with Superintendent Wolfe for a review. Superintendent Wolfe contacted Deputy Commissioner Fulcomer on March 25, 1996 at 1520 hrs. It was a recommendation from both that Marty Miller be suspended pending this investigation. Ms. Donnell typed an official suspension letter which was signed by Superintendent Wolfe. Lt. Beck notified Marty Miller to report to the Superintendent's office, where he was advised of his suspension and investigation of alleged sexual misconduct while working.

I advised Superintendent Wolfe that all my reports, statements, and information would be turned over to Captain Lazenby upon his return.

RCB/sy

CC:  Captain Lazenby
     File

**2**

**CONFIDENTIAL**

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
July 11, 1995

SUBJECT:   **Authorization to Conduct an Investigation**

TO:        Captain Lazenby
           Intelligence Captain

FROM:      William J. Wolfe
           Superintendent

As per our conversation this date, you have my authorization to
conduct a formal investigation into the allegations put forth by
inmate Heather Skipper, OC-7577 regarding COT Lawton.


WJW:jfh

cc: Officer Lawton File

8

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
May 29, 1997

## CONFIDENTIAL INFORMATION

SUBJECT:   WEEKLY INVESTIGATION REPORT

TO:        WILLIAM J. WOLFE
           SUPERINTENDENT

FROM:      R.R. LAZENBY
           INTELLIGENCE CAPTAIN

Case 96-25
Ref: Marty Miller

Awaiting for a court date in Crawford County. This case is still
scheduled for trial, the week of June 16, 1997. There will be
three separate trials. I am still requesting that either Lt.
Scott or Lt. Miller be the escorting Officer do to the nature of
the trial.

CASE 97-16
Ref: Lieutenant Manski and Inmate Pelhman OC3351

I have started the investigation and have interviewed all parties
that have filed reports and need to interview Lieutenant Manski
to complete the investigation. Would you like me to call Lt.
Manski and do a phone interview?

**INFORMATIONAL:**

Still need Sewer lids tacked down.  I will be in Albany New York
for the conference. Report submitted early, due to my schedule.

cc: Deputy Kormanic
    file 5-29-97

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Cambridge Springs**
**June 11, 1998**

SUBJECT:   **Authorization to Conduct**
            **An Investigation**

TO:         Captain Vickie Scott
            Intelligence Captain

FROM:       William J. Wolfe
            Superintendent

                        Re:   Erika Seyler
                              OD-9503

Please review the attached extraordinary occurrence report and
conduct an investigation into the allegations of a staff inmate
relationship.

Please keep me informed of your progress.

WJW:jfh

cc: File

# ATTACHMENT M

## Wolfe Memoranda Requesting OPR Assistance

# CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
October 12, 1994

SUBJECT:   INVESTIGATION OF INMATES
           LAMBERT-OB6416, JAFKA-OC2743

TO:        JOSEPH D. LEHMAN
           COMMISSIONER
           DEPARTMENT OF CORRECTIONS


FROM:      WILLIAM J. WOLFE        BY:   KEITH R. BARTLETT
           SUPERINTENDENT                INTELLIGENCE CAPTAIN


On April 7, 1994, we began an investigation on inmate Lisa Lambert-OB6416, for allegations of sexual contact with staff. That investigation was terminated because no tangible evidence could be obtained.

Since that time Captain Bartlett has received information that has had me reconsider this case and reopen the investigation.

Inmate Lambert has made statements to her counselor that herself and inmate Jafka are sexually active with male staff and are "being discreet about it." There is also information from staff that the staff which were previously interviewed and investigated; had other staff cover for them. There are also hints that some new trainees are involved with Lambert and Jafka.

After meeting with Deputy Kormanic and Captain Bartlett, we believe it would be in the best interest of the institution that the Special Investigations Office involved. I therefore am requesting that you assign this case to the Special Investigations Office.

WJW/KRB/hs

CC:   Deputy Kormanic
      Deputy Utz
      File:  ...\O12

EXHIBIT
17

# CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
October 14, 1994

SUBJECT: ABUSE ALLEGATION

TO:     JOSEPH D. LEHMAN
        COMMISSIONER
        DEPARTMENT OF CORRECTIONS

FROM:   *William J. Wolfe*
        WILLIAM J. WOLFE
        SUPERINTENDENT

On October 13, 1994, my office was made aware of an allegation of
abuse to an inmate by Sergeant John Raun.  The inmate involved is
Lisa Lambert-OB6416.  Inmate Lambert reported her claims to Ms.
Wolfgang, Psychologist, on October 11 and 12, 1994, who then
reported to Deputy Utz.

In my absence, Deputy Utz began the monitoring process by ordering
a medical examination and photographs to be taken.  Deputy Utz
alerted Captain Keith R. Bartlett so he could begin fact-finding
information.

Inmate Lambert's charges are as follows:

        On October 4 or 5, 1994, before lunch, she (Lambert) was
        sweeping the stairway landing between Luter-1 and Luter-2.
        She heard keys as someone was coming down the steps.  She saw
        it was Sgt. Raun and moved up against the wall, to the left as
        you come down the steps, to get out of his way.  Sgt. Raun
        went past and she came off of the wall and he turned back to
        her and brought his right knee up to her left thigh, pinning
        her right side against the wall.  His name tag on his jacket
        dug into her left arm leaving a bruise.  His right hand was on
        her left leg just above his knee.  His whole body was leaning
        into her.  He stared at her for five seconds then walked away
        without saying anything.

Inmate reported this as happening on October 4 or 5, 1994; because
she was so upset that she can't remember the exact date.  When
asked by Captain Bartlett why she waited until October 11, 1994 to
report the incident, she replied that she told her counselor, Ms.
Kulasa on Wednesday October 5, 1994, but not about the bruises.
Ms. Kulasa told Captain Bartlett that Ms. Lambert never mentioned
anything about physical abuse, and it was Tuesday October 4, 1994
that she saw her, not Wednesday October 5, 1994, and it was early
afternoon, right after lunch.

On October 11, 1994, Captain Lazenby noted to Sgt. Raun that he had

no name tag on his jacket and that he must have one. Sgt Raun said it had broken.  He then ordered a new one on October 12, 1994. When asked by Captain Bartlett, Sgt Raun said he lost his name tag, that he lost the clip off the name tag on his shirt, replaced it with a clip from the tag on his jacket and put that name tag in his pocket, it was then lost, he says, "about a week or so ago."

After reviewing these allegations, I placed inmate Lambert in the RHU in Administrative Custody status for her protection as well as the security of the institution.

Although these are new changes being brought forth, this is not the first time inmate Lambert has made allegations against Sgt. Raun that have been investigated by the Special Investigations office. Mr. Vaugh Davis conducted the last investigation which cleared Sgt. Raun of any wrong doing.

Considering all of the information presented to date; I am requesting that you assign this case to the Special Investigations office. Captain Bartlett recommends this as well. He feels an in-house investigation might appear to be partial.

WJW/KRB/hs

CC:  Deputy Kormanic
     Deputy Utz
     Captain Bartlett
     File:  ...\O14

CONFIDENTIAL



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
NOVEMBER 29, 1994

**SUBJECT: INVESTIGATION OF COI EICHER / INMATE LAMBERT OB6416**

**TO:** THOMAS A. FULCOMER
DEPUTY COMMISSIONER

**FROM:** WILLIAM J. WOLFE    **BY:** KEITH R. BARTLETT
SUPERINTENDENT         INTELLIGENCE CAPTAIN
SCI-CBS

## CONFIDENTIAL

As per the request of Mr. Vaughn Davis, we have continued the investigation of COI Eicher and inmate Lambert OB6416.

As of this date, all parties involved have been interviewed by Deputy Kormanic or Captain Bartlett. As far as the allegations of sexual contact we have, at best, circumstantial evidence. Both COI Eicher and inmate Lambert refuse to take polygraph tests. Lambert will not even talk to us as she says her attorney advised her not to. It was explained to COI Eicher that if he was indeed innocent, then a polygraph would only stand to help him. He consulted an attorney then refused.

We do have enough evidence to charge COI Eicher for several violations of the Code of Ethics (i.e. Section B, items 10,23, and 30).

1.    On November 11, 1994 COI Eicher had visited the RHU. He was not on official business, therefore violating written orders to not be in the RHU.

He was logged in as being there for one minute (1252 to 1253). The Officer on duty stated he was there five to seven minutes and visited inmate Lambert. COI Eicher says he was there five to seven minutes and that his watch and the RHU clock must be different. He denies visiting with Lambert. He falsified the log and is lying about visiting inmate Lambert.

2.    On November 16, 1994 he wrote a Misconduct on inmate Wright OB6825 for Indecent Exposure. According to the two staff witnesses he has listed, there never was any exposure, simply a statement made by the inmate. COI Eicher falsified this Misconduct.

EXHIBIT
19
PENGAD Bayonne, N.J.

If we could polygraph the key inmate informants we could use that information for our case.

At this point we are at a stalemate in the investigation and therefore request further assistance and consultation with Special Investigations to complete the investigation regarding allegations of sexual misconduct.

KRB/sy

CC:    Deputy Kormanic
       Vaughn Davis, Director Special Investigations
       File

Bish, Linda (FSI)
February 1995

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
**February 8, 1995**

**SUBJECT:   STAFF INVESTIGATION**

**TO:       THOMAS A. FULCOMER**
**          DEPUTY COMMISSIONER,**
**          WESTERN REGION**

**FROM:     WILLIAM J. WOLFE**
**          SUPERINTENDENT**

Enclosed, please find a copy of Captain Bartlett's report on the
staff investigation of Ms. Linda Bish, Food Service Instructor.

I concur with Captain Bartlett's recommendation to have all parties
involved polygraphed.  As Captain Bartlett pointed out, we have an
eyewitness who has made a sworn statement as well as sworn
statements from both the staff member and inmate involved.

I request that you assign this investigation to the Special
Investigations office, to assist us in making a determination of
who is telling the truth.

Thank you for your assistance.  Any questions regarding this case
can be directed to myself or Captain Bartlett.

WJW/KRB/hs

CC:  Deputy Kormanic
     Captain Bartlett
     Mr. Vaughn L. Davis

# CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
March 13, 1995

SUBJECT:   **Request for Special Investigations**
           **Office Assistance**

TO:        Thomas A. Fulcomer
           Deputy Commissioner

FROM:      William J. Wolfe          BY: K.B. Bartlett
           Superintendent               Intelligence Captain

On March 10, 1995, a preliminary investigation was started on
C.O.T. Richard Hammers in regards to sexual contact with an inmate.

As a result, C.O.T. Hammers was suspended pending the final
outcome.   C.O.T. Allen came forward and advised us that Officer
Hammers told him of several occasions of sexual contact including
one occasion when Officer Allen observed both Officer Hammers and
the inmate disappear for a period of time from open recreation.
Both Officer Hammers and the inmate deny any wrong doing.

Officer Hammers is willing to polygraph even after discussion with
the union.   The inmate refused to polygraph.

At this time, we are requesting the assistance of the Special
Investigations Office not only to conduct the polygraph but to
assist Captain Bartlett in concluding this investigation as soon as
possible as we can only suspend Officer Hammers for thirty (30)
days pending this investigation.

We are also requesting an outside investigator be assigned a sexual
harassment investigation involving Office Hammers as the
complainant.   We believe this would be a conflict of interest for
Captain Bartlett.

Any questions can be directed to my office or to Captain Bartlett.

WJW/jfh

cc: Deputy Kormanic
    File

5

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
December 5, 1995

**CONFIDENTIAL**

SUBJECT:    **Request of the Assistance of**
            **Special Services**

TO:         Thomas A. Fulcomer
            Deputy Commissioner

FROM:       William J. Wolfe
            Superintendent

I am seeking your approval to receive the assistance of Special
Services to aid us in the investigation of allegations of
fraternization between Officer Michael Stone and inmate Erika
Johnson.

Officer Stone has been under suspicion for improprieties with
inmates for quite some time, however, we have been unable to
substantiate this.  During a recent visit to SCI-Muncy Michael
Wolanin, Special Investigator, obtained additional information
regarding the allegations concerning Officer Stone.

Inmate Erika Johnson has recently agreed to cooperate with our
investigation.

We are requesting the assistance of Special Services to collaborate
information and provide polygraphic services.

WJW:jfh


cc: File

Jones, Brenda (CO)
January 1996

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI-Cambridge Springs**
**February 23, 1996**

## CONFIDENTIAL

**SUBJECT:**  **Request for Assistance In An Investigation**

**TO:**        Thomas A. Fulcomer
              Deputy Commissioner

**FROM:**    *W. J. Wolfe*
              William J. Wolfe
              Superintendent

On this date I was notified by Mike Wolanin that a confidential source has made allegations that one of our officers, Brenda Jones, CO I, had a personal relationship with Carmel Bynum while she was an inmate at our Institution.  According to Mr. Wolanin, telephone records will substantiate this allegation.

Since the scope of this investigation is beyond our local resources, I am requesting the assistance of the Bureau of Professional Responsibilities in this matter.

I will await your reply.

WJW/jfh

cc:  File

EXHIBIT
135

**COMMONWEALTH OF PENNSYLVANIA**
**Department of Corrections**
**SCI-Cambridge Springs**
**March 25, 1996**

**SUBJECT:**    Request for Assistance from the Office of Professional Responsibility

**TO**:    Thomas A. Fulcomer
Deputy Commissioner
Western Region

*W. J. Wolfe*

**FROM:**    William J. Wolfe
Superintendent

I am formally requesting investigative assistance from the Office of Professional Responsibility into numerous inmate allegations of sexual misconduct by Martin Miller, Plumbing Instructor.

During the past several years we have received similar allegations concerning Mr. Miller, however, our local investigations were terminated due to a lack of sufficient evidence to corroborate the charges.

We presently have two inmates who were willing to sign statements and submit themselves to a polygraph test. Without outside assistance, I am concerned this case will also be dropped due to a lack of evidence.

I believe Mr. Miller is discrete enough not to act out inappropriately in the presence of witnesses.

Please find attached copies of the most recent investigative reports submitted by Lieutenant Beck.

I am thanking you in advance for your consideration of this request.

WJW/cld

cc:    Vaughn Davis
File/miller.396

15

Commonwealth of Pennsylvania
Department of Corrections
SCI-Cambridge Springs
January 27, 1997

**Subject:** **Request for Assistance**
**Office of Professional Responsibilities**

**To:**      Martin F. Horn
Commissioner

**From:**    William J. Wolfe
Superintendent

We have recently concluded a local investigation into suspicions of
staff fraternization between inmate Janice Albright, OC-8798, and
Mary Hull a Corrections Officer I.    Inmate Albright alleged that
Officer Hull has been trying to establish a romantic relationship
with her for several months.    Inmate Albright produced a greeting
card which contained inappropriate comments and sexual innuendos
that was allegedly sent to her by Officer Hull.

We are requesting the assistance of the Office of Professional
Responsibility to assist us further in this investigation and have
a handwriting analysis completed to determine if Officer Hull
authored the greeting card.

Quite unexpectedly during this investigation, Lt. Kim Miller
informed us that Officer Denise Mielnek had reported to her that
Sgt. Lori Chase had revealed to her (Mielnek) that she had been
romantically attached and involved with inmate Janice Albright
also.    During this conversation, Sgt. Chase allegedly stated that
she had kissed inmate Albright on at least one occasion and had
carried love letters from Albright to her, out of the Institution.
Sgt. Chase has indicated she would be willing to submit to a
polygraph examination.

Due to the extent and the growing complexity of the investigation
and the need for technical assistance to move forward, I am urging
you to refer this case to the Office of Professional
Responsibility.

Thank you in advance for your consideration of this request.

WJW:jfh

cc: Deputy Commissioner Fulcomer
    File

# ATTACHMENT N

**Documentation *Re* Wolfe's Actions
Towards Eicher, Walton, and Miller**

# ADVISORY

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI-CAMBRIDGE SPRINGS**
**August 23, 1995**

**SUBJECT:    OFFICER JAMES EICHER**

**TO:           ALL CONCERNED**

**FROM:       WILLIAM J. WOLFE**
**SUPERINTENDENT**


Please be advised effective immediately, Officer James Eicher is not permitted on institutional grounds without authorization from my office. Any contact with Officer Eicher must be documented and the Shift Commander advised immediately.


WJW/hs
CC;   Deputies
        Mr. Cyr
        Captains
        Shift Commander
        Control
        File

*3*

MARTIN F. HORN
COMMISSIONER
DEPARTMENT OF CORRECTIONS

COMMONWEALTH OF PENNSYLVANIA

STATE CORRECTIONAL INSTITUTION

AT CAMBRIDGE SPRINGS

FULLERTON AVENUE
Cambridge Springs, PA 16403-1229
Telephone 814-398-5400

WILLIAM J. WOLFE
SUPERINTENDENT

Address All Replies
To Superintendent

August 23, 1995

James R. Eicher
RD#1, Box 25A
Hartstown, PA 16131

Dear Mr. Eicher:

SS#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

The purpose of this correspondence is to inform you that you are suspended, pending investigation from your position as Corrections Officer 1, effective 23 August 1995. This action is taken as the result of alleged violation of the Commonwealth of Pennsylvania, Department of Corrections Code of Ethics, specifically Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families."

Based upon the results of the investigation a Pre-Disciplinary Conference may be scheduled. You will be notified by separate letter of the date and time of that conference should it be necessary.

You will be suspended for a length of time not to exceed thirty (30) compensable days pending the outcome of the investigation.

Your appeal rights under the Civil Service Act are explained on the attached Civil Service Appeal Form (SCSC 4112).

Your rights in this personnel action are explained in the Discharge, Demotion, Suspension, and Discipline Article of the A.F.S.C.M.E. H-1 Agreement. However, the Grievance and Arbitration Article of the A.F.S.C.M.E. H-1 Agreement also provides relevant information concerning your appeal rights.

A copy of this letter will be placed in your Official Personnel File.

Sincerely,

William J. Wolfe
Superintendent for
Martin F. Horn
Commissioner

WJW/afg

cc:     State Civil Service Commission
        Bureau of Human Resources
        Mr. Musser - Labor Relations
        Deputy Kormanic
        Deputy Utz
        Local Union 3740
        AFSCME District Council 85
        Personnel File



EXHIBIT
23

MARTIN F. HORN
COMMISSIONER
DEPARTMENT OF CORRECTIONS

COMMONWEALTH OF PENNSYLVANIA

STATE CORRECTIONAL INSTITUTION

WILLIAM J. WOLFE
SUPERINTENDENT

AT CAMBRIDGE SPRINGS

FULLERTON AVENUE
Cambridge Springs, PA 16403-1229
Telephone 814-398-5400

Address All Replies
To Superintendent

August 31, 1995

James R. Eicher
RD#1, Box 25A
Hartstown, PA 16131

Dear Mr. Eicher:                                                SS#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

This is to advise you that a Pre-Disciplinary Conference has been scheduled for Wednesday, September 5, 1995 at 10:00 a.m. in the office of the Superintendent. At this time, you will be offered the opportunity to respond to the incident(s) which occurred on or about March 19, 1994 through October 10, 1994 while you were a Corrections Officer Trainee/Corrections Officer 1 with the Department of Corrections at the State Correctional Institution at Cambridge Springs which possibly violates the following:

DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 6: "There shall be no fraternization or private relationship of staff with inmates, parolees or members of their families."

Specifically:

1.  On March 19, 1994 at 6:40 p.m. in the Curry Hall music room, you performed oral sex on inmate Lambert (OB6416), followed by sexual intercourse.

2.  On March 23, 1994 at approximately 4:15 p.m. and again at 6:30 p.m., in the Curry Hall music room, you had sexual intercourse with inmate Lambert.

3.  On April 7, 1994 between 6:00 p.m. and 8:00 p.m., in the field house, you had sexual intercourse with inmate Lambert twice.

4.  On August 20, 1994 between 7:30 p.m. and 7:45 p.m., in a bathroom near open rec, you pulled inmate Lambert's sweat pants down, performed oral sex and had sexual intercourse with her twice.

5.  On September 9, 1994 at 6:40 p.m. on the second floor of Alliance Hall, you performed oral sex and had sexual intercourse with inmate Lambert.

6.  October 10, 1994 at 6:45 p.m. on the second floor of Alliance Hall, you again performed oral sex and had sexual intercourse with inmate Lambert.

7.  Inmate Jafko observed you grab and kiss inmate Lambert. You bragged to her about being involved and having sex with inmate Lambert.

EXHIBIT
25
PENGAD Bayonne N.J

Page 2
James Eicher
SS#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

> DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 30: "All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth.

Specifically:

1.    We have documentation that you provided inmate Lambert with poems and notes. You denied all allegations.

You have the right to have a union representative present at the conference if you so choose. It will be your responsibility to arrange such representation with an A.F.S.C.M.E. H-1 designated representative.

Based upon the finding established during the conference, appropriate action shall be initiated up to and including possible dismissal.

Sincerely,

William J. Wolfe
Superintendent for
Martin F. Horn
Commissioner

WJW/afg

cc:    Deputy Kormanic
        Deputy Utz
        Mr. Musser - Labor Relations
        Local Union 3740
        AFSCME District Council 85
        Personnel File

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
September 6, 1995

SUBJECT:    REQUEST TO DISMISS EMPLOYEE - JAMES R. EICHER,
CORRECTIONS OFFICER 1, (REGULAR STATUS);
SSN: 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; APPOINTED: 09/13/93

TO:        Martin F. Horn           ATTN:    Daniel R. Tepsic
           Commissioner                      Director
                                             Bureau of Human Resources
FROM:      William J. Wolfe
           Superintendent

Corrections Officer 1, James R. Eicher, was suspended (pending investigation) on August 23, 1995 due to alleged violations of the Department of Corrections Code of Ethics.

The investigation was conducted by The Office of Special Investigations which found alleged violations of the Department of Corrections Code of Ethics, Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families." Number 30: "All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth."

A Pre-Disciplinary Conference was held on September 6, 1995 to investigate the following charges:

1.    On March 19, 1994 at 6:40 p.m. in the Curry Hall music room, Officer Eicher performed oral sex on inmate Lambert (OB6416), followed by sexual intercourse.

2.    On March 23, 1994 at approximately 4:15 p.m. and again at 6:30 p.m., in the Curry Hall music room, Officer Eicher had sexual intercourse with inmate Lambert.

3.    On April 7, 1994 between 6:00 p.m. and 8:00 p.m., in the field house, Officer Eicher had sexual intercourse with inmate Lambert twice.

4.    On August 20, 1994 between 7:30 p.m. and 7:45 p.m., in a bathroom near open rec, Officer Eicher pulled inmate Lambert's sweat pants down, performed oral sex and had sexual intercourse with her twice.

5.    On September 9, 1994 at 6:40 p.m. on the second floor of Alliance Hall, Officer Eicher performed oral sex and had sexual intercourse with inmate Lambert.

EXHIBIT
26
PHNGAD Bayonne N J

Page 2
September 6, 1995

6.   October 10, 1994 at 6:45 p.m. on the second floor of Alliance Hall, Officer Eicher
again performed oral sex and had sexual intercourse with inmate Lambert.

7.   Inmate Jafko observed Officer Eicher grab and kiss inmate Lambert. Officer Eicher
bragged to her about being involved and having sex with inmate Lambert.

8.   We have documentation that Officer Eicher provided inmate Lambert with poems
and notes. Officer Eicher denied all allegations.

During the Pre-Disciplinary Conference credible evidence was presented by Special Investigator,
Michael Wolanin, showing James R. Eicher had the motive and opportunity to commit the alleged
acts, and that the handwriting analysis of the poems and notes was substantiated by the Pennsylvania
State Police crime lab as belonging to Mr. Eicher.

On August 23, 1995 Mr. Eicher was charged with violating the following Pennsylvania Crimes Code
Numbers:

3125 - Aggravated Indecent Assault
Felony of the second degree

3126 - Indecent Assault
Misdemeanor of the second degree

5301 - Official Oppression
Misdemeanor of the second degree

A hearing on the above listed charges will be held on September 29, 1995.

Due to the nature of the accusations, Corrections Officer 1 James Eicher's conduct has brought
discredit to his profession, his responsibilities, the Department of Corrections, and Public Service
at large. We feel that he has lost all credibility and trustworthiness and has sustained irreversible
damage in regard to his ability to effectively carry out his duties and responsibilities in a
Correctional Institution.

In view of the above, I request approval to terminate Corrections Officer 1 James Eicher, regular
status.

attachments

WJW/RDC/afg

cc:   Deputy Commissioner Fulcomer
Mr. Musser - Labor Relations
Mr. Cyr



IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

Criminal Division

| COMMONWEALTH | : | 1995 - 1060 |
|---|---|---|
| | : | |
| vs. | : | AGGRAVATED INDECENT ASSAULT |
| | : | INDECENT ASSAULT |
| JAMES EICHER | : | OFFICIAL OPPRESSION |

**S E N T E N C E**

Gordon R. Miller, P.J.,

AND NOW, July 12, 1996, the sentence of the Court is as follows:

1.    For a conviction of Aggravated Indecent Assault a felony of the second degree, you shall undergo imprisonment in the State Correctional Institution at Pittsburgh for a minimum term of 18 months and a maximum term of 36 months with credit for 2 days of presentence incarceration and you shall pay the costs of prosecution and a $100 fine.

2.    For a conviction of Indecent Assault as a misdemeanor of the second degree, in view of the sentence imposed above, no sentence is imposed on this count.

3.    For a conviction of Official Oppression a misdemeanor of the second degree, the sentence of the Court is that you shall pay a fine of $100 and are placed on probation for a period of 2 years consecutive to the sentence imposed for aggravated indecent assault.

**2**

**JOSEPH D. LEHMAN**
COMMISSIONER
DEPARTMENT OF CORRECTIONS

**COMMONWEALTH OF PENNSYLVANIA**

**STATE CORRECTIONAL INSTITUTION**

**AT CAMBRIDGE SPRINGS**

451 FULLERTON AVENUE
Cambridge Springs, PA 16403-1238
Telephone 814-398-5100
Network: 8 684-5100

**WILLIAM J. WOLFE**
SUPERINTENDENT

Address All Replies
To Superintendent

November 10, 1994

Paul L. Walton
580 Cullum Street
Meadville, PA 16335

Dear Mr Walton:                                    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

The purpose of this correspondence is to inform you that you are
suspended (pending investigation) from your position as
Corrections Food Service Supervisor effective 10 November 1994.

This action is taken as the result of alleged violation of The
Department of Corrections Code of Ethics, and substandard work
performance.

A Pre-disciplinary conference will be scheduled in the near future.
You will be notified by separate letter of the date and time of
that conference.

Your appeal rights in this matter are explained in Article 28,
Discharge, Suspension, Demotion of the Collective Bargaining
Agreement between the Commonwealth and the H-1 Bargaining
Unit.

Article 37, Grievances and Arbitration, also provides information
concerning your contractual appeal rights.

Sincerely,

*Charles M for W.J.W.*
William J. Wolfe
Superintendent for
Joseph D. Lehman, Commissioner

cc:  Deputy Utz
     Labor Relations
     File
     Local 3740 President

9

DEPARTMENT OF CORRECTIONS
SCI Cambridge Springs
November 10, 1994


**Subject:  PAUL L. WALTON**


**To:**       Main Control


**From:**     *Charles Utz*
              Charles Utz
              Deputy Superintendent
              Centralized Services


              Effective immediately Mr. Paul Walton is prohibited from
              entering the Institution without Superintendent Wolfe's
              prior approval.


cc:   Deputies
      Captains
      Mr. Stewart
      Shift Commanders


*10*

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
December 5, 1994

**SUBJECT:** Request to Dismiss Employee – Paul L. Walton, Corrections Food Service Supervisor, (Permanent Status); SSN: 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; Appointed: 3-27-92

**TO:** Joseph D. Lehman
Commissioner

**ATTN:** Daniel R. Tepsic, Director
Bureau of Human Resources

**FROM:** William J. Wolfe
Superintendent

Corrections Food Supervisor, Paul Walton, was suspended (pending investigation) on November 10, 1994 due to alleged violation of The Department of Corrections Code of Ethics.

The investigation was conducted by the Office of Special Investigations which found alleged violation of The Department of Corrections Code of Ethics, Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families."

A Pre-Disciplinary Conference was held on November 22, 1994 to investigate the following charge:

Inmate Emma Gleckl #OB9927 gave a written statement admitting a relationship with Paul Walton of a sexual nature, whereas, on or about February 23, 1994 through August 1994, on four occasions Paul Walton received oral sex from Inmate Gleckl. Additionally on or about March 5, 1994, Paul Walton pressed his body against Inmate Gleckl's body, pinning her against the tray rail in the Dietary serving area, pulled her shirt and bra up and fondled and kissed her breasts, Mr. Walton also put his hands down the front of her pants during this same occasion. Inmate Gleckl told Paul Walton that "she wanted to leave" and Mr. Walton stated that "she wasn't going yet, and if she did she would be going to the RHU."

RECEIVED Bureau of Human Resources 7 1994

36

Joseph D. Lehman
Daniel R. Tepsic
Page 2
December 2, 1994

During the Pre-Disciplinary Conference, on the advise of
his Union Counsel, Dennis Tipton, Local 2367, Paul Walton
got up and walked out of the conference. The Pre-
Disciplinary Conference was held in abstinentia, hearing
the results of the investigation given by Director,
Vaughn Davis and Special Investigator, Michael Wolanin.

On November 22, 1994, Mr. Walton was charged with
violating the following Pennsylvania Crimes Code Numbers:

> 3123 - Involuntary Deviate Sexual Intercourse, a
> felony of the first degree
>
> 3126 - Indecent Assault, a misdemeanor of the
> second degree
>
> 5301 - Official Oppression, a felony of the first
> degree.

A hearing on the above listed charges will be held on
December 09, 1994.

Due to the nature of the accusations, Corrections Food
Service Supervisor Paul Walton's conduct has brought
discredit to his profession, his responsibilities, The
Department of Corrections, and public service at large.
We feel that he has lost all credibility and
trustworthiness and has sustained irreversible damage in
regard to his ability to effectively carry out his duties
and responsibilities in a correctional institution.

In view of the above, I request approval to terminate
Corrections Food Service Supervisor Paul Walton
(Permanent Status).

cc:  Deputy Commissioner Fulcomer
     Timothy Musser
     Roger Cyr



RECEIVED
DEC 07 1994
Bureau of
Human Resources

37

RECEIVED

JUL 1 2 1995

IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA
Criminal Division

CASTOREG

COMMONWEALTH                    :    1995 - 23
                                :
vs.                             :
                                :
PAUL WALTON                     :    INDECENT ASSAULT

## S E N T E N C E

Gordon R. Miller, P. J.

            AND NOW, July 10, 1995, after a verdict of guilty
of indecent assault a misdemeanor of the second degree.  The
sentence of the Court is that you pay the costs, pay a fine of
$500, and undergo imprisonment in the Crawford County Jail for a
minimum period of 3 months and a maximum period of 24 months less
one day.

            You shall be entitled to work release privileges for 5
days per week provided your jail conduct is perfect.  This
sentence takes effect immediately.  However, incarceration is
deferred.  You shall report to the jail when you are notified to
appear by the Work Release Director.  The Work Release Director
shall call you at home at 337-2239 or at work at 337-3778.  He
shall give you at least 48 hours advance notice.  When you enter
the jail, you shall be substance free.  You shall not have
consumed any alcoholic beverages, intoxicating liquors, beer, or
wine nor any nonprescribed drugs or medications within 24 hours
from the time you enter the jail.  The Warden shall administer
tests to determine if you have violated this restriction.  If so,
work release privileges shall be withdrawn instantly and you
shall serve your sentence in the general population.

                        BY ORDER OF THE COURT,


                        (Signed) Gordon R. Miller
                                    P. J.

Attorney for Commonwealth:
DOUGLAS W. FERGUSON, A.D.A.
Attorney for Defendant:
R. CHARLES THOMAS, ESQ.
m



EXHIBIT
32

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
March 10, 1995

SUBJECT: **COT Richard Hammers**

TO:        Control

FROM:      William J. Wolfe
           Superintendent

Effective March 10, 1995, C.O.T. Richard Hammers is not permitted to enter the institution until further notice, without the approval of my office.

**NOT TO BE READ AT ROLL CALL!**

WJW/jfh

cc: Deputy Kormanic
    Deputy Utz
    Roger Cyr
    Shift Commanders
    File

4

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
March 25, 1996

SUBJECT: Martin Miller

TO:        Control

FROM:      William J. Wolfe
           Superintendent

Effective March 25, 1996, Martin Miller is not permitted to enter the Institution until further notice, without the approval of my office.

## NOT TO BE READ AT ROLL CALL!

WJW/cld

cc:    Deputy Kormanic
       Deputy Utz
       Roger Cyr
       Shift Commanders
       File/miller.396

EXHIBIT
80
PENGAD Bayonne NJ

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
April 25, 1996

SUBJECT:   REQUEST TO DISMISS EMPLOYEE - MARTIN MILLER,
CORRECTIONS PLUMBING TRADE INSTRUCTOR ( REGULAR STATUS);
SSN: 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; APPOINTED: 02/28/94
POSITION NUMBER: 162621

TO:        Martin F. Horn           ATTN:    Daniel R. Tepsic
           Commissioner                      Director
                                             Bureau of Human Resources
FROM:      William J. Wolfe
           Superintendent

Corrections Plumbing Trade Instructor, Martin Miller, was suspended (pending investigation) on
March 25, 1996 due to alleged violations of the Department of Corrections Code of Ethics.

The investigation was conducted by The Office of Professional responsibility which found alleged
violations of the Department of Corrections Code of Ethics, Section B, Specific Rules and
Regulations, Number 6: "There shall be no fraternization or private relationship of staff with
inmates, parolees, or members of their families." Number 29: "All employees shall comply and
cooperate with internal investigations conducted under the authority of the Department of
Corrections, and respond to questions completely and truthfully. Procedure in cases that may result
in criminal prosecution will include those rights accorded to all citizens of the Commonwealth."
Number 10: "Employees are expected to treat their peers, supervisors and the general public with
respect and conduct themselves properly and professionally at all times; unacceptable conduct or
insolence will not be tolerated." Section A, General responsibility of Department of Correction's
Employees, Number 6: Private Employment, "No Department Employee shall engage in or accept
private employment or render private services when such employment or service is incompatible or
in conflict with the discharge of the employee's official duties or would tend to impair the
employee's independent judgement or action in the performance of his/her duties. Requests for
outside employment must be made in compliance with management directive 515.18, Supplementary
Employment."

A Pre-Disciplinary Conference was held on April 25, 1996 to investigate the following charges:

1.    Inmate Pehlman, OC3351, stated that while working on Mr. Miller's plumbing crew,
      Mr. Miller kissed her, grabbed her breasts and butt, and on several occasions Mr.
      Miller pulled out his penis and told her to feel it.

2.    Inmate Vasquez, OC7919, stated that on numerous occasions, Mr. Miller felt her

2\

Page 2
April 25, 1996

breasts and between her legs, and on one occasion took her to Kosciusko Hall and
forced her to perform oral sex on Mr. Miller.

3.   Inmate Phillips, OC1674, stated that on numerous occasions during March 1996 Mr.
Miller fondled her breast, rubbed her left leg, grabbed and felt between her legs, and
told her to "drop her pants and show him what she's got", and on one occasion Mr.
Miller pulled out his penis and told her to touch it.

4.   Inmate White, OC3674, stated that on one occasion Mr. Miller brought in a 3.5 oz.
container of perfume and gave it to her.

5.   Inmate Jackson, OA1441, stated that once while on a ladder painting a wall, Mr.
Miller asked if her breasts were real and could he touch them.

6.   Inmate Jones, OB3626, stated that Mr. Miller always passed out candy and fireballs
to members of his plumbing crew.

7.   Inmate Maysonet, OB4751, stated that Mr. Miller always gave candy to members of
his plumbing crew, and once told her to pull up her shirt and reveal her chest.

8.   Corrections plumbing trade instructor Wayne Young reported that he observed Mr.
Miller put an arm around an inmate, and brought candy and fireballs in and gave
them to inmates.

9.   Corrections plumbing trade instructor James Stoops reported that he thought that
Mr. Miller was too friendly with the female inmates and observed Mr. Miller place
his arm around an inmate and bring in candy and fireballs and give them to
inmates.

10.   During Mr. Miller's interview with the investigator from the office of professional
responsibility, Mr. Miller did not respond to questions truthfully.

11.   During Mr. Miller's interview, Mr. Miller admitted to ownership of an Avon
Business.  There is no approved supplemental employment form on file for this or
any other business.

12.   Corrections Officer Jaqueline Cerne reported that Mr. Miller has rubbed her back,
arms and touched her butt.  This unwanted behavior was done in/front of inmates and
other staff.

22

Page 3
April 25, 1996

During the Pre-Disciplinary Conference credible evidence was presented by Special Investigator, Michael Wolanin, showing Martin Miller had the opportunity to commit the alleged acts, which is substantiated by staff witness statements.

Due to the nature of the accusations, Corrections Plumbing Trade Instructor Martin Miller's Conduct has brought discredit to his profession, His responsibilities, the Department of Corrections, and public service at large, we feel that he has lost all credibility and trustworthiness and has sustained irreversible damage in regard to his ability to effectively carry out his duties and responsibilities in a Correctional Institution.

WJW/RDC/jdz

cc:     Deputy Commissioner Fulcomer
        Mr. Musser - Labor Relations
        Mr. Cyr

23

IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA

Criminal

COMMONWEALTH                    :   1997 - 656
                                :
VS.                             :
                                :
MARTIN L. MILLER                :

RECEIVED

DEC 05 1997

D.A.'S OFFICE

## S E N T E N C E

Gordon R. Miller, P. J.

AND NOW, December 1, 1997, the Sentence of the Court is as follows:

For indecent assault, a misdemeanor of the second degree, under Count 1, the defendant shall pay the costs, shall pay a fine of $100 and shall undergo imprisonment in the Crawford County Jail for a minimum term of 3 months and a maximum term of 24 months, less one day, with credit for one day of pre-sentence incarceration.

For official oppression, a misdemeanor of the second degree, under Count 2, the defendant is placed on probation for a period of one year, to run concurrent with the sentence imposed for Count 1.

For indecent assault, a misdemeanor of the second degree, under Count 7, the defendant shall pay a fine of $100 and shall undergo imprisonment in the Crawford County Jail for a minimum term of 4 months and a maximum term of 24 months, less one day, which said sentence shall run consecutive to the sentence imposed in Count 1.

For indecent exposure, a misdemeanor of the second degree, under Count 8, the defendant shall pay a fine of $100 and is placed on probation for a period of one year, to run concurrent with the sentence imposed for indecent assault under Count 7.

For official oppression, a misdemeanor of the second degree, under Count 9, the defendant is placed on probation for a period of one year, to run concurrent with the sentence imposed for indecent assault, under Count 7.



EXHIBIT
94

For official oppression, a misdemeanor of the second degree, under Count 15, the defendant shall pay a fine of $100 and is placed on probation for a period of one year, to run concurrently with the sentence imposed for indecent assault, under Count 7.

The defendant shall be entitled to work release privileges.

The defendant shall report to the Crawford County Jail to begin serving this sentence prior to 12 o'clock Noon on Thursday, December 4, 1997.

The sentence imposed for Count 7, indecent assault, exceeded the Standard Range by one month. The reason for that is that the Court did that for ease of calculation. We intended to give the defendant jail time for indecent exposure. Another aggravating circumstance with respect to all of these crimes is that they did occur over a period of time and involved three victims.

The aggregate sentence is 7 months to 48 months, less two days.

BY THE COURT,

(Signed)    Gordon R. Miller

President Judge

Attorney for the Commonwealth:
Paula C. DiGiacomo, Esquire, ADA

Attorney for the Defendant:
Donald E. Lewis, Esquire

P.

-2-