DC-121A

**DEPARTMENT OF CORRECTIONS EMPLOYEE
REPORT OF EXTRAORDINARY OCCURRENCE**

To: DEPUTY KORMANIC
From: LAURI DONAHUE
Title: C.O.T.
Date: 04-07-94
Signature: Lauri Donahue C.O.T.

Institution: SCI-CBS
Date: 04-07-94
Time: 2025
Area: LUTER 2B
Occurrence: INMATE IN UNAUTHORIZED A[REA]

**Inmates Involved:**
Name & DC No.

LAMBERT, LISA OB6416
RICHEZ, ROCHELLE OB5024

**Staff Involved:**
Name & Title

BARB KLINE, L.O.T.
LT. FOSTER
LT. SAUNDERS
CO. REICH

**Witnesses:**

**Actions Taken:**

Round 2 - refer to other EO's

[signature] COTC

A 252

**2**

Description of Incident, in detail: (Use other side if necessary):

AT THE ABOVE MENTIONED DATE AND TIME, INMATE LAMBERT OB6416 HAD ASKED TO GO DOWNSTAIRS TO SHAKE THE RUG SHE WAS HOLDING WHICH WAS A MULTI-COLORED "RAG" TYPE RUG. SHE WAS GIVEN PERMISSION TO SHAKE THE RUG, AND AT 2028 LT. FOSTER CALLED THIS OFFICER STATING THAT CO. REICH HAD REPORTED SEEING SOMEONE ON FOURTH FLOOR OF UNIT. LT FOSTER ORDERED ME TO CONTACT OT KLINE WHO WAS THE L2A UNIT OFFICER, TELL KLINE TO MONITOR THE STAIRWELLS, TOLD ME TO MONITOR THE STAIRWELLS AT MY END, AND THAT C.O.T. EICHER AN[D] LT. SAUNDERS WERE GOING UP TO FOURTH FL[OO]R TO INVESTIGATE

A 253

IN ORDER FOR ME TO WATCH THAT STAIRWELL WHEREBY ALL INMATE TRAFFIC PASSES FOR THE LUTER UNIT. AS I ORDE- ROCHEZ CA5024 TO HOLD THE DOOR, I STOOD IN FRONT OF THE OFFICER'S DESK SO AS TO SEE DOWN BOTH B + C HALLWAYS NORTH SIDE OF UNIT, AND ALSO DIALED THE LUTER 2A UN AND GAVE COT KLINE THE ORDERS I'D RECEIVED FROM LT. FOSTER AS I WAS SPEAKING TO COT KLINE, I SAW COT EICHER G UP THE STAIRS PASSING THE LUTER 2B LANDING, AND LE THAN A MINUTE LATER SAW LT SAUNDERS GO UP ALSO. AT 2030 I SAW INMATE LAMBERT OB6416, QUICKLY DART FROM T C/NORTH STAIRWELL INTO HER ROOM WHICH ADJOINS THAT DOORWAY TO STAIRWELL. THAT STAIRWELL IS AN UN-AUTHORIZ AREA. THIS OFFICER IMMEDIATELY WENT DOWN TO HER ROOM, WHICH HAD NO LIGHT ON, AND ORDERED LAMBERT O TO COME OUT OF HER CLOSET. THIS OFFICER ESCORTED HER THE OFFICER STATION AND TOLD HER TO STAND IN THE OFFICER AREA. THIS OFFICER CONTINUED TO MONITOR THE HALLS UNTI AND LT. SAUNDERS ARRIVED AFTER I RADIOED FOR HIM. HE WAS TOLD BY THIS OFFICER THAT I HAD SEEN LAMBERT OB COME FROM THE UNAUTHORIZED STAIRWELL, DARTING INTO HER ROOM. THE LT. SAUNDERS ORDERED HER TO BE PATTED IN H ROOM AS A SEARCH, WHICH I DID, FINDING NO CONTRABAND. THIS OFFICER HEARD LAMBERT OB6416 TELL LT SAUNDERS THAT SHE "BLACKED OUT" AND "DIDN'T KNOW" WHERE SHE WAS AT. THIS OFFICER CONDUCTED A PARTIAL ROOM SEARCH WITH LT. SAUNDERS, AND I CLOSELY EXAMINED THE CLOTHING SHE'D HAD ON AT YARD UNTIL 2000 AS WELL AS THE RUG SHE HAD TAKEN TO SHAKE. IT HAD BEE TOSSED AT THE FOOT OF HER BED ON THE FLOOR

2 of 2

On 4-7-94 between 7:00pm & 8:00pm. I overheard C.O. Eicher tell Lisa Lambert he will meet her on the 4th floor in Luter at 8:15.

I have been aware that Lisa has met with Eicher on several times before at Curie during activities. That I had not witnessed. She told me about.

On the occasion of the 7th, Eicher made several flirtatious and sexual comments to Lisa and said to me. "I hope what I'm saying stays between us."

Some of the comments were of this nature. He said he wasn't cold anymore, he was hot being around Lisa. He said he should get rid of the girl in activities so they could go into the fieldhouse cause he didn't want to wait.

I swear that the above statements are true to the best of my knowledge.

Lisa J. Kanzel
086502
4-8-94

Sworn to and subscribed before me this 8th day of April 1994.

Cheryl L. Donnell

NOTARIAL SEAL
CHERYL L. DONNELL Notary Public
Cambridge Springs Boro. Crawford Co.
My Commission Expires Sept. 9, 1995

Lt. Scott
WITNESS

254

A 254

referred to the Commissioner of Morgan's letter to r. Lambert.

CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
April 14, 1994

SUBJECT: REPORT OF FACT FINDING

TO: WILLIAM J. WOLFE
SUPERINTENDENT

FROM: KEITH R. BARTLETT
INTELLIGENCE CAPTAIN

On April 7, 1994, inmate Lisa Lambert, OA6416, was found on the fourth (4th) floor of Luter Hall and later placed in the R.H.U. pending an investigation by Lt. Saunders.

On April 8, 1994, Lt. Scott and I interviewed inmate Lazzell, OB6502, who provided a sworn and notarized statement stating that COT Eicher had on April 7, 1994, while in the Yard, told inmate Lambert to meet him at 8:15 PM on Luter-4.

Lt. Scott and I then interviewed inmate Lambert who claims to have become sick and dizzy and "blacked out" on Luter-1 while shaking out a rug, and "came to" on Luter-4. Inmate Lambert stated that when she realized that she was in an unauthorized area, she went down the stairs and to her room.

I asked inmate Lambert why she used the "C" side stairway when she knew it was also an unauthorized area. Inmate Lambert replied; "I was scared, so I went that way."

Inmate Lambert said she had had prior blackouts and that Nurse Sandy (Pietrzak) had treated her after a blackout episode in Dietary. Nurse Pietzak has no recollection of any such event, nor is there anything in inmate Lambert's medical file to indicate any history of blackouts. When asked if she would submit to a lie detector test, inmate Lambert replied: "Only if my attorney is present."

On April 11, 1994, I interviewed COT Eicher who was in Luter-1 on April 7, 1994, when he was called to check Luter-4. COT Eicher states he had hardly spoken to inmate Lambert in the Yard the night of April 7, 1994. In response to questioning COT Eicher about allegations that he asked inmate Lambert to meet him; COT Eicher replied "That's bullshit, that's ridiculous." When asked if he

Page 1 of 2

A 255

would submit to a lie detector test, COT Eicher said "Sure."

**SUMMARY:**

I don't believe a word of inmate Lambert's claim that she "blacked out." I question how someone could climb four (4) flights of stairs while being "sick and dizzy." There is no documentation to support her claims. Inmate Lambert could not keep eye contact and sat in a defensive posture during the interview.

As for COT Eicher, there is no concrete proof to support inmate Lazzell's claim. COT Eicher maintained good eye contact, sat with his feet on the floor, appeared relaxed, and answered all questions directly and confidently. COT Eicher appeared surprised when asked about meeting inmate Lambert (ie: eyes dialated, mouth dropped open).

I gave COT Eicher directions on being careful around inmates and advised him to not hesitate reporting any concerns he may have of inmates trying to lead him into compromising situations.

Inmate Lambert was issued misconduct #523324 on April 12, 1994, for Class I, Catagory D, #26: Lying to an employee, and Catagory #27: Presense in an unauthorized area.

KRB/hs

CC:  Deputy Kormanic
     Deputy Utz
     Mr. Davis, Director
          Special Investigations
     File:  ...414



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
NOVEMBER 29, 1994

SUBJECT: INVESTIGATION OF COI EICHER / INMATE LAMBERT OB6416

TO: THOMAS A. FULCOMER
DEPUTY COMMISSIONER

FROM: WILLIAM J. WOLFE        BY: KEITH R. BARTLETT
SUPERINTENDENT                    INTELLIGENCE CAPTAIN
SCI-CBS

## CONFIDENTIAL

As per the request of Mr. Vaughn Davis, we have continued the investigation of COI Eicher and inmate Lambert OB6416.

As of this date, all parties involved have been interviewed by Deputy Kormanic or Captain Bartlett. As far as the allegations of sexual contact we have, at best, circumstantial evidence. Both COI Eicher and inmate Lambert refuse to take polygraph tests. Lambert will not even talk to us as she says her attorney advised her not to. It was explained to COI Eicher that if he was indeed innocent, then a polygraph would only stand to help him. He consulted an attorney then refused.

We do have enough evidence to charge COI Eicher for several violations of the Code of Ethics (i.e. Section B, items 10, 23, and 30).

1.  On November 11, 1994 COI Eicher had visited the RHU. He was not on official business, therefore violating written orders to not be in the RHU.

    He was logged in as being there for one minute (1252 to 1253). The Officer on duty stated he was there five to seven minutes and visited inmate Lambert. COI Eicher says he was there five to seven minutes and that his watch and the RHU clock must be different. He denies visiting with Lambert. He falsified the log and is lying about visiting inmate Lambert.

2.  On November 16, 1994 he wrote a Misconduct on inmate Wright OB6825 for Indecent Exposure. According to the two staff witnesses he has listed, there never was any exposure, simply a statement made by the inmate. COI Eicher falsified this Misconduct.

A 257

EXHIBIT 19 257

If we could polygraph the key inmate informants we could use that information for our case.

At this point we are at a stalemate in the investigation and therefore request further assistance and consultation with Special Investigations to complete the investigation regarding allegations of sexual misconduct.

KRB/sy

CC:  Deputy Kormanic
     Vaughn Davis, Director Special Investigations
     File

COMMONWEALTH OF PENNSYLVANIA
Pennsylvania Department of Corrections
January 31, 1995

Case No. 94-F-095

SUBJECT: Closing Case Regarding:
CO I James Eicher

TO: Keith Bartlett
Intelligence Captain
State Correctional Institution Cambridge Springs

FROM: Vaughn L. Davis
Director
Special Investigations Office

This letter is authorizing you to close any case you may have regarding Corrections Officer I James Eicher.

Sufficient evidence was not found to warrant any further investigation in this matter.

If you have any questions, please call.

EXHIBIT 20

A 259

```
                                        COMMONWEALTH OF PENNSYLVANIA
                                        DEPARTMENT OF CORRECTIONS
                                        SCI-CAMBRIDGE SPRINGS
                                              February 6, 1995
```

SUBJECT:   Investigation of:
           Corrections Officer-1 EICHER

TO:        Superintendent Wolfe

FROM:      *Keith R. Bartlett, CPT.*
           Keith R. Bartlett
           Intelligence Captain


Sir, this is a final report on the investigation of Corrections Officer-1 James Eicher.

After consulting with the Special Investigations Office at Central Office, it was determined that there was not sufficient evidence to continue an investigation.

Attached, please find a copy of the memo I have received from Mr. Vaughn Davis regarding this investigation. I concur with Mr. Davis' recommendation to terminate this case.

If you have any further questions or concerns, please feel free to contact me.

KRB/hs

CC:   Deputy Kormanic
      File:   ...\206.95


EXHIBIT
21

A 260

# ADVISORY

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
August 23, 1995

**SUBJECT:** OFFICER JAMES EICHER

**TO:** ALL CONCERNED

**FROM:** WILLIAM J. WOLFE
SUPERINTENDENT

Please be advised effective immediately, Officer James Eicher is not permitted on institutional grounds without authorization from my office. Any contact with Officer Eicher must be documented and the Shift Commander advised immediately.

WJW/hs
CC; Deputies
   Mr. Cyr
   Captains
   Shift Commander
   Control
   File

A 261

3

MARTIN F. HORN
COMMISSIONER
DEPARTMENT OF CORRECTIONS

COMMONWEALTH OF PENNSYLVANIA

STATE CORRECTIONAL INSTITUTION

AT CAMBRIDGE SPRINGS

FULLERTON AVENUE
Cambridge Springs, PA 16403-1229
Telephone 814-398-5400

WILLIAM J. WOLFE
SUPERINTENDENT

Address All Replies
To Superintendent

August 23, 1995

James R. Eicher
RD#1, Box 25A
Hartstown, PA 16131

Dear Mr. Eicher:

SS#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

The purpose of this correspondence is to inform you that you are suspended, pending investigation from your position as Corrections Officer 1, effective 23 August 1995. This action is taken as the result of alleged violation of the Commonwealth of Pennsylvania, Department of Corrections Code of Ethics, specifically Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families."

Based upon the results of the investigation a Pre-Disciplinary Conference may be scheduled. You will be notified by separate letter of the date and time of that conference should it be necessary.

You will be suspended for a length of time not to exceed thirty (30) compensable days pending the outcome of the investigation.

Your appeal rights under the Civil Service Act are explained on the attached Civil Service Appeal Form (SCSC 4112).

Your rights in this personnel action are explained in the Discharge, Demotion, Suspension, and Discipline Article of the A.F.S.C.M.E. H-1 Agreement. However, the Grievance and Arbitration Article of the A.F.S.C.M.E. H-1 Agreement also provides relevant information concerning your appeal rights.

A copy of this letter will be placed in your Official Personnel File.

Sincerely,

William J. Wolfe
Superintendent for
Martin F. Horn
Commissioner

WJW/afg

cc:  State Civil Service Commission
     Bureau of Human Resources
     Mr. Musser - Labor Relations
     Deputy Kormanic
     Deputy Utz
     Local Union 3740
     AFSCME District Council 85
     Personnel File

EXHIBIT 23

A 262

# AFFIDAVIT OF PROBABLE CAUSE

COMMONWEALTH OF PENNSYLVANIA

VS.

JAMES EICHER                                    Incident Number      95-F-030

I, Michael Wolanin, of the Special Investigations Office, Pennsylvania Department of Corrections, being duly sworn according to law, make the following affidavit of probable cause in support that a criminal complaint / arrest warrant be issued against the above named defendant:

On May 24, 1995, a situation was brought to my attention that was occurring at the State Correctional Institution at Cambridge Springs, 451 Fullerton Avenue, Cambridge Springs, Crawford County. This situation involves a relationship, sexual in nature, between a Corrections Officer and an inmate. The Corrections Officer is James Eicher, listed as the Defendant. The inmate is Lisa Lambert.

On May 30, 1995, inmate Lisa Lambert was interviewed, and advised this investigator that on or about March 19, 1994, until on or about October 10, 1994 she and Corrections Officer Eicher were sexually involved. Eicher, for his own personal sexual gratification on numerous occasions had sexual intercourse, performed oral sex on Lambert, and kissed the inmate.

On June 22, 1995, a confidential informant was interviewed. This individual indicated in a signed statement observing James Eicher grab and passionately kiss Lambert.

Several writings and poems, most of a sexual nature were obtained from Lambert. These documents were submitted for an expert handwriting analysis opinion. It was verified on August 11, 1995, by expert opinion that Eicher did write the submitted documents.



GR EXHIBIT 22 263

A 263

COMMONWEALTH OF PENNSYLANIA

VS.

JAMES EICHER


SWORN TO AND SUBSCRIBED BEFORE ME THIS

____ DAY OF _____ 19__

_____        _____
DISTRICT JUSTICE                                           AFFIANT

A 264

| CRIMINAL COMPLAINT POLICE | COMPLAINT NUMBER | YEAR | TYPE | NUMBER |
|---|---|---|---|---|
| | | | CR-130-95 | |

```
ROBERT LEONHART
       DISTRICT JUSTICE
MAGISTERIAL DISTRICT NO. 30-3-03
182 VENANGO AVENUE
CAMBRIDGE SPRINGS, PA  16403
```

Complaint Numbers if Other Participants

09613 -I

| INCIDENT NUMBER | UCR NO. | OTN |
|---|---|---|
| 95-F-030 | | E181991-5 |

'95 OCT 16 PM 4 28

1995-1060

COMMONWEALTH OF PENNSYLVANIA
VS.
DEFENDANT:

NAME AND ADDRESS: James Eicher
RD 1, Box 25-A
Hartstown, PA  16131

R.S.A.: White-Male-28 Years-DOB: 01/05/67
AKA: SSN: 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

I, Michael Wolanin, Special Investigator
   (Name of Affiant)

of Pennsylvania Department of Corrections
   (Identify department or agency represented and political subdivision)
   PO Box 598, Camp Hill, PA  17001-0598

do hereby state under oath or affirmation, to the best of my knowledge, information and belief:

(1) [XX] I accuse the above named defendant, who lives at the address set forth above or,
    [ ] I accuse an individual whose name is unknown to me but who is described as _____
    [ ] his nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe;

with violating the penal laws of the Commonwealth of Pennsylvania at State Correctional Institution at Cambridge Springs, 451 Fullerton Avenue, Cambridge Springs, PA  16403
       (Place-Political Subdivision)
in Crawford County on or about 03/19/94 through 10/10/94.

Participants were (if there were participants, place their names here, repeating the name of above defendant):
James Eicher

(2) The acts committed by the accused were: (A) **Aggravated Indecent Assault** (F-2) A person commits a felony of the second degree when he engages in penetration, however slight, of the genitals of another if the person is in custody of law or detained in an institution and the actor has supervisory or disciplinary authority over him to wit: Corrections Officer James Eicher did engage in sexual intercourse with inmate Lisa Lambert at the State Correctional Institution Cambridge Springs. **Indecent Assault** (M-2) A person who has indecent contact with another, not his spouse, or caused such other to have indecent contact with him is guilty if the other person is in custody of law or detained in an institution and the actor has supervisory or disciplinary authority over him to wit: corrections Officer James Eicher did have indecent contact with inmate Lisa Lambert by performing oral sex on her at the State Correctional Institution Cambridge Springs. **Official Oppression** (M-2) A person acting in an official capacity or took advantage of another knowing his conduct is illegal when he subjected another to mistreatment to wit: Corrections Officer James Eicher did mistreat and take advantage of Lisa Lambert, an inmate at the State Correctional Institution Cambridge Springs by having sexual intercourse and performing oral sex on her

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in violation of 3125, 3126, 5301 and (5); (a-5), (1) of the Act of Pennsylvania Crimes Code
                    (Section)         (Sub-section)

or the _____ Ordinance of _____
                          (Political Sub-division)

(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made. I swear to or affirm the within complaint upon my knowledge, information and belief, and sign it on _Aug 22_, 19_95_, before _[signature]_
                                                                                                                                    (Signature of Affiant)

Personally appeared before me on _Aug 22_, 19_95_, the affiant above named who, being duly sworn (affirmed) according to law, signed the complaint in my presence and deposed and said that the facts set forth therein are true and correct to the best of affiant's knowledge, information and belief.

**3**

_[signature]_ (SEAL)
(Issuing Authority)

AND NOW, on this date _Aug 22_, 19_95_, I certify the complaint has been properly sworn to and before me, and that there is probable cause for the issuance of process.

A 265

_____
(Magisterial District)

_[signature]_ (SEAL)
(Issuing Authority)

MARTIN F. HORN
COMMISSIONER
DEPARTMENT OF CORRECTIONS

COMMONWEALTH OF PENNSYLVANIA
STATE CORRECTIONAL INSTITUTION
AT CAMBRIDGE SPRINGS

FULLERTON AVENUE
Cambridge Springs, PA 16403-1229
Telephone 814-398-5400

WILLIAM J. WOLFE
SUPERINTENDENT

Address All Replies
To Superintendent

August 31, 1995

James R. Eicher
RD#1, Box 25A
Hartstown, PA 16131

Dear Mr. Eicher:                                                        SS#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

This is to advise you that a Pre-Disciplinary Conference has been scheduled for Wednesday, September 5, 1995 at 10:00 a.m. in the office of the Superintendent. At this time, you will be offered the opportunity to respond to the incident(s) which occurred on or about March 19, 1994 through October 10, 1994 while you were a Corrections Officer Trainee/Corrections Officer 1 with the Department of Corrections at the State Correctional Institution at Cambridge Springs which possibly violates the following:

DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 6: "There shall be no fraternization or private relationship of staff with inmates, parolees or members of their families."

Specifically:

1. On March 19, 1994 at 6:40 p.m. in the Curry Hall music room, you performed oral sex on inmate Lambert (OB6416), followed by sexual intercourse.

2. On March 23, 1994 at approximately 4:15 p.m. and again at 6:30 p.m., in the Curry Hall music room, you had sexual intercourse with inmate Lambert.

3. On April 7, 1994 between 6:00 p.m. and 8:00 p.m., in the field house, you had sexual intercourse with inmate Lambert twice.

4. On August 20, 1994 between 7:30 p.m. and 7:45 p.m., in a bathroom near open rec, you pulled inmate Lambert's sweat pants down, performed oral sex and had sexual intercourse with her twice.

5. On September 9, 1994 at 6:40 p.m. on the second floor of Alliance Hall, you performed oral sex and had sexual intercourse with inmate Lambert.

6. October 10, 1994 at 6:45 p.m. on the second floor of Alliance Hall, you again performed oral sex and had sexual intercourse with inmate Lambert.

7. Inmate Jafko observed you grab and kiss inmate Lambert. You bragged to her about being involved and having sex with inmate Lambert.

A 266

EXHIBIT 25

Page 2
James Eicher
SS#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

DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 30: "All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth.

Specifically:

1. We have documentation that you provided inmate Lambert with poems and notes. You denied all allegations.

You have the right to have a union representative present at the conference if you so choose. It will be your responsibility to arrange such representation with an A.F.S.C.M.E. H-1 designated representative.

Based upon the finding established during the conference, appropriate action shall be initiated up to and including possible dismissal.

Sincerely,

William J. Wolfe
Superintendent for
Martin F. Horn
Commissioner

WJW/afg

cc: Deputy Kormanic
Deputy Utz
Mr. Musser - Labor Relations
Local Union 3740
AFSCME District Council 85
Personnel File

A 267

MARTIN F. HORN
COMMISSIONER
DEPARTMENT OF CORRECTIONS

WILLIAM J. WOLFE
SUPERINTENDENT

COMMONWEALTH OF PENNSYLVANIA

STATE CORRECTIONAL INSTITUTION

AT CAMBRIDGE SPRINGS

FULLERTON AVENUE
Cambridge Springs, PA 16403-1229
Telephone 814-398-5400

Address All Replies
To Superintendent

September 22, 1995

James R. Eicher
RD#1, Box 25A
Hartstown, PA 16131

Dear Mr. Eicher:
SS#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

This is to advise you that effective 4:30 p.m. on September 27, 1995, you are terminated from your position as a Corrections Officer 1 at the State Correctional Institution at Cambridge Springs.

On September 6, 1995 a Pre-Disciplinary Conference was held to afford you the opportunity to respond to the charges of violation of the DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 6: "There shall be no fraternization or private relationship of staff with inmates, parolees or members of their families." You offered the explanation that the incidents did not happen.

During the course of the conference, information was presented which established that between March 19, 1994 and October 10, 1994, on at least six occasions, you had a relationship of a sexual nature with a female inmate, from which you performed oral sex, as well as, had sexual intercourse with her. Additionally, you provided this female inmate with poems and notes.

In addition, subsequent to the Pre-Disciplinary Conference, criminal charges were filed against you concerning the very same actions which we have determined to be in violation of the Department of Corrections Code of Ethics.

Mr. Eicher, your sexual involvement with an inmate whose care, custody, and control you were responsible for is at a minimum irresponsible and unethical. Your actions are in violation of our Code of Ethics and for that reason you are being terminated.

Please return any state property including, but not limited to the following items: identification cards, keys, tools, equipment, books, reports, or uniforms to your supervisor before September 29, 1995.

Your Group Life Insurance Policy may be converted to an individual policy. You must contact the personnel office at SCI-Cambridge Springs for the necessary information within thirty-one (31) days of your termination.

Blue Cross/Blue Shield will contact you directly concerning continuation of policies on a direct pay basis.

A 268

Page 2
SS#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

You are to return you Prescription Drug Card to the PEBTF 150 South 43rd Street, Ste. 3 Harrisburg, PA 17111-5700. After September 27, 1995, you are no longer permitted to use this or any other employe benefit.

It will be necessary to contact The Regional State Employes Retirement System at P.O. Box 01561, Seneca, PA 16346 regarding lump sum withdrawal of your retirement contribution.

You will be paid by supplemental check for any accrued and unused combined leave.

Your appeal rights under the Civil Service Act are explained in the instructions and information section on the attached Civil Service Appeal From (SCSC-4112).

Your rights in this personnel action are explained in the Discharge, Suspension, and Discipline Article of the A.F.S.C.M.E. H-1 Agreement. However, the Grievance and Arbitration Article of the A.F.S.C.M.E. H-1 Agreement also provides relevant information concerning your appeal rights.

A copy of this will remain in your official personnel file.

Sincerely,

William J. Wolfe
Superintendent for
Martin F. Horn
Commissioner

WJW/afg

cc:   Deputy Commissioner Fulcomer
      Deputy Kormanic
      Deputy Utz
      Mr. Musser - Labor Relations
      Bureau of Human Resources
      Local Union 3740
      AFSCME District Council 85
      State Civil Service Commission - SS#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
      Personnel SCI-CBS
      file

A 269