FILED

99 MAY 23 PM 3:43

CLERK OF COURTS
CRAWFORD COUNTY, PA

# VERDICT

## Court of Common Pleas
## of Crawford County
## Criminal

**COMMONWEALTH**

vs.

James Eicher
_____

Charge: Aggravated Indecent Assault
_____

Indecent Assault
_____

Official Oppression
_____

No. 1995-1060
_____

Now, _May 23_, 1996, at 4:30 o'clock, P M.
we, the Jurors empaneled in the above entitled
case, do, upon our solemn oaths by us taken,
say that we find the Defendant

Count 1 : Aggravated Indecent Assault - _Guilty_
_____

Count 2 : Indecent Assault -      -  _Guilty_
_____

Count 3 : Official Oppression -    _Guilty_
_____

_____

_____

_Peggy O'Brien_ Foreman

Date & Time Jury Drawn: _5-20-96_

Date Trial Commenced: _5-20-96_

Date Case to Jury: _5-23-96_

Date & Time Verdict: _5-23-96   4:31 p.m._

Date & Time Verdict Returned: _5-23-96   4:48 p.m_

EXHIBIT
28
AD-Bayonne,NJ

A 311

# CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Cambridge Springs
September 15, 1994

SUBJECT:  **Request for an Investigation**

TO:    Lt. Roger Beck

FROM:   William J. Wolfe
       Superintendent

On this date, Deputy Utz notified me by telephone that he received
information that three (3) inmates observed Mr. Walton in a walking
cooler with another inmate and his pants zipper was down. The
inmates conveyed this information to Ms. Appleby. According to the
information I received, the inmates denied observing any improper
conduct or physical contact.

Please follow up on this information and provide a written report
to my office on your findings.

WJW:jfh

cc: File

A 312



# Confidential

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
September 19, 1994

SUBJECT:   INVESTIGATIVE REPORT
           OF MR. PAUL WALTON

TO:        SUPERINTENDENT WOLFE

FROM:      LT. ROGER C. BECK, Sr.

The information provided in this written report as per your request, is accurate and is inconclusive as of this date.  More information will be forthcoming.  The inmates involved as witnesses are not identified, but Mr. Stewart is expected to provide names on Tuesday, September 20, 1994, after speaking to Ms. Hargett.  Mr. Walton is not available for interview during my working hours due to injury of his foot.

At 0800 hours this date, I interviewed Ms. Appleby, who essentially stated that all she knew was that Food Service Supervisor Ms. Hargett approached her last week and asked if she had heard that three (3) inmates had seen Mr. Walton in a walk-in cooler with inmate Gleckl, OB9927.  The three inmates observed that Mr. Walton's pants zipper was down, but did not see anything else out of the ordinary.  Ms. Appleby reported that Ms. Hargett said to "...not say anything to anyone."  Ms. Appleby immediately reported this incident to her Supervisor, Mr. Stewart, who advised Deputy Utz; hence this investigation.

Mr. Stewart was interviewed at 0900 hours this date, and acknowledged that the above information was accurate and had transpired as stated.  Mr. Stewart advised that he would try to provide me with the names of the three inmates.

At 0930 hours this date, I interviewed inmate Gleckl, OB9927.  During the course of questioning, Gleckl stated that she is employed as Mr. Walton's clerk, and has been for the past five to six weeks, and frequently goes into coolers, freezers, and storage areas with Mr. Walton while working.  Inmate Gleckl states they have never has any type of sexual contact, nor has Mr. Walton ever made any advances.  Concerning the incident in question, Gleckl did not recall any such event.  Becoming very defensive, inmate Gleckl

Page 1 of 2                                                    A 313

2

requested specific dates and times.

I am unable to determine at this time if Gleckl is being completely truthful.  Due to the nature of her offense, one would lean toward the possibility that all is not being told.  Gleckl stated that her co-workers are "...jealous of her and are just trying to make trouble and start rumors."


I will follow-up with more information on this report as it becomes available.

RCB/hs

CC:   Deputy Kormanic
      Deputy Utz
      Captain Bartlett
      File:  ...\919

A 314

*3*

# Confidential

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
September 23, 1994

SUBJECT:    FOLLOW-UP INVESTIGATION
REPORT OF MR. PAUL WALTON

TO:        WILLIAM J. WOLFE
SUPERINTENDENT

FROM:      LT. ROGER C. BECK, Sr.
EMERGENCY PREPAREDNESS
COORDINATOR

On Friday, September 16, 1994, Mr. Stewart, the Food Service Manager, came into the Institution to talk to Food Service Supervisor Ms. Hargett, at 2200 hours, to ascertain the names of the inmates that reported this incident to her. Only one name was brought forward, that of inmate Katy Poust, OC2271, which Mr. Stewart advised to this writer.

On Friday, September 23, 1994, I interviewed inmate Poust at 1000 hours. Poust stated she merely heard about this incident from inmate Jeray Ruper, OC2895. When asked if she held any relativity to hearing this, Poust stated she would not put anything past him. Poust went on to say that Mr. Walton has, in the past, pulled her aside to talk to her alone about his family and has tried to be very friendly, but as far as she could determine, he never made sexual advances towards her. Poust stated that she fears him, as she hears other inmates talk about his sexual prowess. Poust was afraid to say anything or make a report for fear of reprisals. Poust stated that she is very young and thought this was a reason that Mr. Walton frequently talked to her, but that she had no interest in learning or hearing about his private life.

At 1015 hours, this same date, I interviewed inmate Jeray Ruper, OC2895. Ruper pretty much related to Poust's statements, just adding that Mr. Walton has in the past made off-color comments to her, but because she is leaving on Parole next Friday, just "blew them off", as she didn't want to mess up her parole. Ruper stated that all the inmates in Dietary on the PM shift are "talking about Mr. Walton."

A 315

4

At 1210 hours, this same date, I interviewed Mr. Walton in the privacy of my office. When questioned about this specific incident, he immediately denied the whole thing and stated that the inmates he has "pissed off" are just trying to start trouble. He did not have much more to say, and offered no further information other then "there's better looking inmates that work for me other than Gleckl."

After conferring with Captain Bartlett, it is our recommendation that Mr. Vaugh Davis, Director of Special Investigations at Central Office, be contacted for the possibility of administering a lie detector test to Mr. Walton, to determine if the facts and statements concerning this incident are truthful or not.

RCB/hs

CC:    Deputy Kormanic
       Deputy Utz
       Captain Bartlett
       File:  ...\923

A 316

5

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
OCTOBER 3, 1994

SUBJECT:   INVESTIGATION OF MR. WALTON

TO:        SUPERINTENDENT WOLFE

FROM:        KEITH R. BARTLETT
             INTELLIGENCE CAPTAIN

After speaking to Mr. Vaughn Davis, Director of Special Investigations, it is determined that there is nothing more we can do with this case.

There is no real victim, no one claiming any abuse or harassment charged, just an observation made and reported. Mr. Walton denies any wrong doing.

Mr. Davis feels it would be a waste of time to perform a polygraph in this case, because even if we did there would be no where to follow up. Mr. Davis also states you can call him if you have any questions or concerns.

I recommend this investigation to be terminated.

KRB/sy

CC:  Deputy Kormanic
     Deputy Utz
     Lt. Beck
     File

A 317

6

**DC-121A**

# DEPARTMENT OF CORRECTIONS EMPLOYEE
## REPORT OF EXTRAORDINARY OCCURRENCE

To: CAPTAIN BARTLETT                Institution: SCI CB

From: DARRELL L. STUYVESANT        Date: 11·1·94

Title: COT                          Time: 17:55

Date: 11· 2· 94    CONFIDENTIAL     Area: DIETARY INMATE DINING ROOM

Signature: _Darrell L. Stuyvesant_  Occurrence: INMATE CARESSING STAFF MEMB

| Inmates Involved: Name & DC No. | Staff Involved: Name & Title | Witnesses: |
|---|---|---|
| GLECKL, EMMA  CB'1927 | WALTON  DIETARY/PM | COT DRAGO |
| | | |
| | | |
| | | |
| | | |

**CONFIDENTIAL**

Actions Taken:

REVIEWED- PLACED IN INVESTIGATION FILE- COPY TO MR. WOLGWIN.

_Capt Smith_

Description of Incident, in detail: (Use other side if necessary):          A 318

ON NOVEMBER 1, 1994 AT APPROX: 17:55, WHILE I WAS IN THE PROCESS OF
OPENING EVENING OPEN REC, THIS OFFICER WAS ON THE PORTABLE PH
WITH CONTROL RECEIVING INFORMATION CONCERNING OUR FIRST NIGHT
OF OPEN REC, AS I WAS WALKING AND TALKING ON THE PHONE I WENT BY
THE INSTRUCTOR OFFICE IN DIETARY AS I LOOKED IN I NOTICED MR. WAL·
SITTING AT HIS DESK WITH HIS BACK TO INMATE GLECKL OB4127 SHE WAS CARESSIN
HIS BACK WITH HER FINGERS. BECAUSE, I WAS ON THE PHONE, I MOTION
FOR COT DRAGO TO MAKE THE SAME OBSERVATION, AS I BACK-OFF THE
SCENE. AFTER I GOT OFF THE PHONE, DRAGO AND I BOTH CONCUR
AS TO WHAT WE SAW.                                    7  318

DEPARTMENT OF CORRECTIONS EMPLOYEE
REPORT OF EXTRAORDINARY OCCURRENCE

To: _Captain Bartlett_                    Institution: __SCI - CB__

From: _Melissa A. Dragg_                  Date: __1 November 94__

Title: __COT__                           Time: Appch 1755

Date: _2 November 94_   CONFIDENTIAL     Area: Dietary Inmate Dining R

Signature: _Melina Dragg_                Occurrence: Inmate caressing staff mer

**Inmates Involved:**          **Staff Involved:**
Name & DC No.                  Name & Title              Witnesses:

Gleck1, Emma A 081927          Dietary Pm/walton         CCT Stuyvesant

CONFIDENTIAL

**Actions Taken:**

Reviewed - Placed in Investigation File - Copy To Mr. Williams

Carll Scott

**Description of Incident, in detail: (Use other side if necessary):**                    A 319

On 1 November 94 at Appcn. 1755 I went to assist
CCT Stuyvesant with Open Rec. He motioned for me to observ.
what was going on in the instructors office. As I walked
past I observed Mr. walton sitting at his desk with his
back to inmate Gleck1 081927 as she was caressing his
back with her fingers. I further observed this situation
by standing in front of the doorway (door open) looking
inconspicuously for Appcn. 1 to 1 1/2 minutes as this behavio
continued _____ 319

8

JOSEPH D. LEHMAN
COMMISSIONER
DEPARTMENT OF CORRECTIONS

**COMMONWEALTH OF PENNSYLVANIA**

**STATE CORRECTIONAL INSTITUTION**

**AT CAMBRIDGE SPRINGS**

451 FULLERTON AVENUE
Cambridge Springs, PA 16403-1238
Telephone 814-398-5100
Network: 8 684-5100

WILLIAM J. WOLFE
SUPERINTENDENT

Address All Replies
To Superintendent

November 10, 1994

Paul L. Walton
580 Cullum Street
Meadville, PA 16335

Dear Mr Walton:                                    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

The purpose of this correspondence is to inform you that you are
suspended (pending investigation) from your position as
Corrections Food Service Supervisor effective 10 November 1994.

This action is taken as the result of alleged violation of The
Department of Corrections Code of Ethics, and substandard work
performance.

A Pre-disciplinary conference will be scheduled in the near future.
You will be notified by separate letter of the date and time of
that conference.

Your appeal rights in this matter are explained in Article 28,
Discharge, Suspension, Demotion of the Collective Bargaining
Agreement between the Commonwealth and the H-1 Bargaining
Unit.

Article 37, Grievances and Arbitration, also provides information
concerning your contractual appeal rights.

Sincerely,

William J. Wolfe
Superintendent for
Joseph D. Lehman, Commissioner

cc:  Deputy Utz
     Labor Relations
     File
     Local 3740 President

A 320

*9*

DEPARTMENT OF CORRECTIONS
SCI Cambridge Springs
November 10, 1994


**Subject:**   **PAUL L. WALTON**


**To:**        Main Control


**From:**      *Charles Utz*
               Charles Utz
               Deputy Superintendent
               Centralized Services


        Effective immediately Mr. Paul Walton is prohibited from
        entering the Institution without Superintendent Wolfe's
        prior approval.


cc:  Deputies
     Captains
     Mr. Stewart
     Shift Commanders


A 321
10



COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA DEPARTMENT OF CORRECTIONS
Special Investigation Office

November 18, 1994

Case Number:          94-F-091
Report Prepared by:   Mike Wolanin, Special Investigator
Allegation:           Violation Code of Ethics

SUBJECT:

Paul Walton, Food Service Instructor

COMPLAINANT / VICTIM:

Emma Gleckl, OB-9927
DOB: 01/16/51

State Correctional Institution Cambridge Springs

APPROVED:

Vaughn L. Davis
Director
Special Investigations Office

DISTRIBUTION:

Commissioner Lehman
File

A 322

CONFIDENTIAL

SYNOPSIS

This investigation was authorized by Vaughn L. Davis, Director, Special Investigations Office, (SIO), on November 1, 1994, predicated by a complaint initiated by this investigator.

On October 27, 1994, while conducting interviews for an unrelated case, information was revealed that Food Service Instructor Paul Walton was sexually involved with inmate Emma Gleckl, OB-9927.

When interviewed, Emma Gleckl stated from February 23, 1994 thru the end of August 1994, Paul Walton intimidated her and threatened a transfer to maintenance from dietary or giving her "a room with a view", meaning the Restricted Housing Unit, (RHU). Gleckl said she was terrified of Walton.

Gleckl further stated Walton continually grabbed her breasts, pinched her butt and once, while working late at night, pinned her against the dietary serving line, pulled her shirt and bra up, fondled and kissed her breasts. Walton also intimidated Gleckl on four occasions into giving him oral sex.

Inmates Linda Sorenson, OC-0992, and Doris Gray, OB-4795, were interviewed. Both being dietary workers, they observed on one occasion, Walton receiving oral sex from Gleckl in a dietary freezer.

Correctional Officer Trainees Darrell Stuyvesant and Melissa Drago stated on November 1, 1994 at 5:55 pm while in the performance of their regular duties, they observed inmate Gleckl caressing Walton's back in the dietary office. This went on for at least 1 1/2 minutes and they observed that Walton did not resist.

Walton was interviewed. He denied all allegations against him. When asked if he was willing to take a polygraph, he said he might but he would fail.

Due to the witnesses statements and the statement of the victim, Gleckl, it was apparent Paul Walton had a close relationship with this inmate.

Paul Walton is in violation of the PA Department of Corrections Code of Ethics, Section 6 stating "There shall be no fraternization or private relationship of staff with inmates". Walton is also in violation of Pennsylvania Crimes Code Section 3126 a(5), Indecent Assault, stating "A person who has indecent contact with another not his spouse is guilty when the person is in custody of law or detained in an institution" and Section 5301 (1), Official Oppression, that while acting in an official capacity he took advantage and mistreated inmate Emma Gleckl. Section 3123 (2), Involuntary Deviate Sexual Intercourse, that he did engage in deviate sexual intercourse with another person by threat of forcible compulsion.

It is this investigators recommendation that Paul Walton, Food Service Instructor, be terminated

2

12  323

CONFIDENTIAL

from his position and criminal charges be filed against him.

TABLE OF CONTENTS

DETAILS:

1.    Request for Investigation

2.    Review of Initial Complaint

INTERVIEWS:                                    PAGE:

1.    Emma Gleckl, OB-9927                    4

2.    Linda Sorenson, OC-0992                 5

3.    Doris Gray, OB-4795                      5, 6

4.    Paul Walton, Food Service Instructor     6

ACTION TAKEN:

1.    Review of Extraordinary Occurrence Report authored by COT Darrell Stuyvesant.

2.    Review of Extraordinary Occurrence Report authored by COT Melissa Drago.

A 324

13    324

CONFIDENTIAL

DETAILS:

1.    This investigation was authorized by Vaughn L. Davis, Director, Special Investigations Office, (SIO), on November 1, 1994, predicated by a complaint initiated by this investigator.

2.    On October 27, 1994, while conducting interviews in an unrelated case, information was revealed that Food Service Instructor Paul Walton was sexually involved with inmate Emma Gleckl, OB-9927.

A copy of the initial complaint is appended as **ATTACHMENT # 1**.

INTERVIEWS:

1.    Emma Gleckl, OB-9927
      DOB: 01/16/51
      SSN: 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

On November 9, 1994, the above inmate was interviewed at SCI Cambridge Springs where she is incarcerated. She advised the following:

> From February 1994 thru August 1994, she was intimidated and threatened by Food Service Instructor Paul Walton for this employee's sexual gratification.

> She said it all started on or about February 23, 1994, with Walton grabbing her breasts and pinching her butt. Walton told her "those feel good". She told Walton to go home and get it. She feels this employee had an obsession for her breasts. It progressed further by Walton intimidating her into giving oral sex on four occasions. This happened in the dish room on or about March 2, 1994, the laundry room on or about March 18, 1994 and twice in the freezer on or about April 30, 1994 and July 20, 1994. She said he finished by ejaculating in her mouth each time. Walton kept a hold on her by saying she would be sent to maintenance or the RHU which was feared terribly by her. Walton also mentioned several times he would give her "a room with a view".

> Once she was working late in dietary in Walton's office on or about March 5, 1994, this staff member grabbed her leg. She became frightened and left the immediate area with Walton following. As she stood against the serving rail, Walton walked over, pinned his body against hers so she couldn't move, pulled her t-shirt up, pulled her bra up then fondled and kissed her breasts. Walton then refused to let her leave and threatened RHU if she did.

> Walton also kissed her on several occasions. She said Walton knew what she was in prison for and said he wanted form her what this employee's wife wouldn't do and that was "oral sex". It was expected of her.

> The threats continued and she was terrified of him.

A copy of Gleckl's statement is appended as **ATTACHMENT # 2**.

A 325
14 325
CONFIDENTIAL

2.    Linda Sorenson, OC-0992
      DOB:  07/06/53
      SSN:  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

On October 27, 1994, the above inmate was interviewed by this investigator at SCI Cambridge
Springs where she is incarcerated.  She advised the following:

> Some time around the beginning of May 1994 between 1:00 and 2:00 pm while working in
> the staff dining room with inmate Doris Gray, inmate Emma Gleckl and Supervisor Paul
> Walton, Walton told Gleckl to help him bring supplies down from the upstairs freezer.
>
> Shortly after, she needed to ask Emma a question and went to look for them.
>
> She walked into the freezer, observed Emma's glasses on a box and Emma performing oral
> sex on Walton.  She left in a hurry telling co-worker Doris Gray what she observed.
>
> About 15 minutes later, Walton and Emma returned.  Walton's clothes were in disarray and
> his zipper down.
>
> He later told the story of knocking Emma on the floor with a box of hot dogs by accident.
> This was said because Walton knew what was seen.

A copy of Sorenson's statement is appended as ATTACHMENT # 3.

3.    Doris Gray, OB-4795
      DOB:  10/25/41
      SSN:  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

On October 27, 1994, the above inmate was interviewed by this investigator at SCI Cambridge
Springs where she is incarcerated.  She advised the following:

> In the beginning of May 1994 during mid-afternoon, she and inmate Linda Sorenson were
> working is the staff dining room when co-workers inmate Emma Gleckl and Food Service
> Instructor Paul Walton left the area.
>
> She said Linda needed Gleckl for something and went looking for that inmate.
>
> She related Linda returned to the dining room telling her what she observed in the freezer.
>
> She walked in the freezer to see for herself and observed Emma Gleckl kneeling in front of
> Paul Walton.  Walton tried to adjust his pants upon observing her walk in.
>
> Shortly after, Emma and Walton came into the dining room.  Walton's shirt was out and his
> pants zipper was down.
>
> Emma had make-up all over her face.  She told this inmate to go to the rest room and fix
> it.

5

A 326                    15 326

CONFIDENTIAL

A copy of Gray's statement is appended as **ATTACHMENT # 4.**

4.　　Paul Walton, Food Service Instructor
　　　DOB: 03/16/50
　　　SCI Cambridge Springs

On November 10, 1994, the above employee was interviewed by this investigator and Director of Special Investigations, Vaughn L. Davis, at SCI Cambridge Springs where he has been employed for 2 1/2 years. He was advised of his Miranda Warnings and agreed to speak with the investigators present. He advised the following:

　　　He said Emma Gleckl is his inmate clerk.

　　　He was not involved in any type of relationship with this inmate which was sexual in nature.

　　　He did not receive oral sex from this inmate.

　　　He did not fondle, grab or kiss her breasts or find himself in any compromising position with Gleckl.

　　　He admitted recently that the inmate gave him a back rub in his office because he was ill but when asked again, later, denied that this occurred.

　　　He denied knowing what Gleckl was in jail for, threatening the inmate with a transfer to maintenance, going to the RHU or giving her "a room with a view".

　　　He admitted being married for the third time and has had extra-marital affairs in the past.

　　　He denied telling Gleckl that his wife would not give him oral sex so he wanted it from her.

　　　When asked if he would take a polygraph, he said he might but he knew he couldn't pass it.

　　　Walton was given a deadline of 1:00 pm on November 14, 1994, to agree to a polygraph which was not met.

ACTION TAKEN:

1.　　Reviewed Extraordinary Occurrence Report authored by COT Darrell Stuyvesant. the review revealed the following:

　　　　　　On November 1, 1994, at 5:55 pm, Emma Gleckl, OB-9927, was observed in Paul Walton's office caressing his back with her fingers. He did not resist.

A copy of Stuyvesant's Extraordinary Occurrence Report is appended as **ATTACHMENT #5.**

6

A 327　　　16
CONFIDENTIAL

2.    Reviewed Extraordinary Occurrence Report authored by COT Melissa Drago.  The review revealed the following:

> On November 1, 1994, at 5:55 pm, this officer observed Paul Walton sitting at his desk with inmate Emma Gleckl, OB-9927, caressing his back with her fingers.

> This was observed for 1 to 1 1/2 minutes before this officer left the area.

A copy of Drago's Extraordinary Occurrence Report is appended as **ATTACHMENT # 6.**

Submitted by: _(signature)_

Date: _November 18, 1994_

A 328
17
CONFIDENTIAL

ATTACHMENTS

1.    Initial Complaint

2.    Emma Gleckl's signed Statement

3.    Linda Sorenson's signed Statement

4.    Doris Gray's signed Statement

5.    Extraordinary Occurrence Report Authored by COT Darrell Stuyvesant

6.    Extraordinary Occurrence Report Authored by COT Melissa Drago

A 329
18   ɔ⊢ı

CONFIDENTIAL

*eag*

I, Emma Gleckl, am giving the following statement of my own free will. No threats or promises have been made to me.

From the last full week of February 1994 until the end of August, 1994 Paul Walton has intimidated me for his own personal sexual gratification.

During the end of February was the first time. He came up behind me and grabbed both my breasts. He told me, " those feel good." I told him that those were mine and not yours, go home and get it.

The fondling of breasts and pinching of my butt continued. He told me once that he knew why I was here, he wanted me to do those things for him. If I don't, he was going to ship me to maintenance.

19    A 330

A 331

In the beginning of March 1994 in the lunchroom, at the middle of March, 1994 in the laundry room, once in April 1994 and once in early July, 1994 in the outside freezer, Paul Walton made me perform oral sex on him. He expected this of me.

In March, 1994 I was sitting in Walton's office at about 9:30 PM when he grabbed my leg. I felt uncomfortable and left his office and went to dietary serving area. He came out, pinned my body against the tray rail, pulled my t-shirt up, pulled my bra up and fondled and kissed my breasts. I told him I wanted to go back to my room. He reacted by putting his hands down the front of my pants, and told me that I was not going back yet. He backed off me and I moved. I told him

331
20

I was going with or without him escorting me. He reminded me I would go to RHU if I went myself.

He told me he wanted from me what his wife wouldn't do, and that was oral sex. He made me do this for him all four times on my knees.

Watson continually threatened me with RHU and that nobody would believe me because I'm an inmate.

*Emma A. Glickd*        Nov 9, 1994

*Charles Wolf*        11/9/94
special investigator

(21) 332

A 332

I, DORIS GRAY, Am giving the following statement to special INVESTIGATOR MICHAEL WOLANIN of my own free will. NO THREATS or promises have been made to me.

About the beginning of MAY, 1994 I was working in DIETARY, STAFF DINING ROOM. About mid-afternoon, myself and LYNDA Dawson were looking for EMMA Cleckle. Lynda left the area, came back immediately and told me what she had seen. We waited for a few minutes but we still needed some item from the outside freezer. I walked out and entered the freezer. I observed Emma on her knees, her glasses were on a box. WALTON saw

333 22

glasses were on a box, WALTON SAW me and attempted to adjust his pants. his shirt was out. When Emma saw me, she got up and put her glasses on. Emma spoke to me and said she would be w, in a minute. I walked out, about 10-15 minutes later WALTON and Emma came into the Dining Room. WALTONS shirt was out, and his zipper was open. Emma had make-up smeared all over her face, I told her to go to the restroom and fix it. She did. WALTON called Linda over and said he dropped a box of hot dogs on Emma's head, thats why she was on her knees,

A 334

Dosie Gray ___ 10/27/94

334 (23)

Michel Wale
Special Investigation
10/27/94

1 of 2
LS

I, LINDA SORENSEN, am giving the following statement to Special Investigator Michael Wolanin of my own free will. NO THREATS or promises have been made to me.

Around the beginning of MAY 1994. LS I DORIS GRAY and EMMA GLECKB were working in the STAFF DINING room with PAUL WALTON WALTON said he needed help taking supplies to the upstairs freezer and asked EMMA to help him. This was at about FOR 2:00 PM. Between meals. The two of them left leaving DORIS and I in the DINING area. I needed to see EMMA about something so I went to look for her. I walked in the large walkin freezer and only took a couple steps in and observed WALTON and

A 335
24

A 336

Emma w the far back corner, there were no lights on but there was light from the outside. After entering, I observed Emma was on her knees, her glasses were on the shelf, she was performing oral sex on Walton. His pants were unhooked and down to his knees. I saw what was happening and walked out. I told Doris Gray what happened and she went in. Doris said that when she went in, they both jumped and Walton was trying to pull his clothes together. Doris left, they still didn't come out for about 15 more minutes. When Walton exited, his clothes were messed up, with his shirt tail out, his zipper was down. About an hour later he gave Doris and I the story that Emma and him went into th. ...

336

(25)

2 of 2
Lcs

He Knocked a box of Hot Dogs off the shelf, knocked Emma down to the floor and her glasses off. This is why he told me what he did because he knows that we saw him.

Linda J Sorensen 10/27/9?

Michael Wolan 10/27/97
Sexual Investigator

A 337

26

# AFFIDAVIT OF PROBABLE CAUSE

COMMONWEALTH OF PENNSYLVANIA

    VS.

    PAUL WALTON

―――――――――――――――――――――    Incident Number 94-F-091

I, Michael Wolanin, of the Special Investigations Office, Pennsylvania Department of Corrections, being duly sworn according to law, make the following affidavit of probable cause in support that a criminal complaint / arrest warrant be issued against the above named defendant:

On October 27, 1994, a situation was brought to my attention that was occurring at the State Correctional Institution Cambridge Springs, 451 Fullerton Avenue, Cambridge Springs, Crawford County. This situation involved a relationship, sexual in nature, between a staff member and an inmate. The staff member is Paul Walton, Food Service Instructor, listed as the defendant. The inmate involved is Emma Gleckl.

On October 27, 1994, **two confidential informants were interviewed.** They both indicated that they worked in Dietary with Emma Gleckl and Food Service Instructor Paul Walton. They both observed, on one occasion in a dietary supply freezer, inmate Emma Gleckl on her knees performing oral sex on Paul Walton. Walton's shirt was out and his pants zipper was down.

On November 9, 1994, Emma Gleckl was interviewed and advised this investigator that on or about February 23, 1994, until on or about the end of August 1994, she and Paul Walton were sexually involved. Walton, for his personal sexual gratification, grabbed, fondled and kissed this inmate's breasts. On four separate occasions within the institution, Gleckl performed oral sex on Walton. This was done by Gleckl with a constant threat over her by this staff member by being taken off of her job in Dietary or placed by him in the Restricted Housing Unit, which was feared terribly by her. Gleckl said that although she wanted no involvement with Walton, he expected it of her. He continually threatened her with the Restricted Housing Unit and stated nobody would believe her because she was an inmate.



**EXHIBIT**

**29**

338

A 338

COMMONWEALTH OF PENNSYLANIA

    VS.

    PAUL WALTON

------

Information provided on November 1, 1994, by Corrections Officers Darrell Stuyvesant and Melissa Drago state that at 5:55 pm this date, they both observed Paul Walton sitting at his desk with inmate Emma Gleckl caressing his back with her fingers for at least a minute and a half. Walton sat there and did not resist.

SWORN TO AND SUBSCRIBED BEFORE ME THIS

_____ DAY OF _____ 19__

_____
    DISTRICT JUSTICE

_____
                  AFFIANT

CRIMINAL COMPLAINT FORM

Robert Leonhart
**DISTRICT JUSTICE**
**MAGISTERIAL DISTRICT NO. 30-3-03**

182 Venango Avenue
Cambridge Springs, PA 16403
FILED

'95 JAN 10 PM 12 52

CLERK OF COURTS
CRAWFORD COUNTY, PA

| COMPLAINT NUMBER | YEAR | TYPE NUMBER |
|---|---|---|
| | 1994 | CR 0000164-94 |

Complaint Numbers if Other Participants

| INCIDENT NUMBER | UCR NO. | OTN |
|---|---|---|
| 94-F-091 | | E 181844-5 |

1995 23

COMMONWEALTH OF PENNSYLVANIA
**VS.**

DEFENDANT

NAME  Paul Walton
AND
ADDRESS 412 Baldwin Street
Meadville, PA  16335
R.S.A.  White-Male-44 Years-DOB: 03/16/1950
A.K.A.  SSN:  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

I, __Michael Wolanin, Special Investigator__
(Name of Affiant)

of __PA Dept. of Corrections__
(Identify department or agency represented and political subdivision)
PO Box 598, Camp Hill, PA  17001-0598

do hereby state:

(1) [X] I accuse the above named defendant, who lives at the address set forth above or,

[ ] I accuse an individual whose name is unknown to me but who is described as ___

(Check appropriate box)

[ ] his nickname or popular designation is unknown to me and, therefore, I have designated him herein as John Doe; with violating the penal laws of the Commonwealth of Pennsylvania at __State Correctional Institution__
(Place-Political Subdivision)
at Cambridge Springs, 451 Fullerton Avenue, Cambridge Springs, PA  16403
in __Crawford__ County on or about __02/23/1994 through 08/30/1994__

Participants were (if there were participants, place their names here, repeating the name of above defendant).
Paul Walton

(2) The acts committed by the accused were: (A) Involuntary deviate sexual intercourse (F1). A person commits a felony of the first degree when he engages in deviate sexual intercourse with another by threat of forcible compulsion; by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution to wit:  Food Service Instructor Paul Walton did by forcible compulsion on four (4) occasions receive oral sex from inmate Emma Gleckl at the State Correctional Institution at Cambridge Springs. Indecent Assault: A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him is guilty if the other person is in custody of law or detained in an institution and the the actor has supervisory or disciplinary authority over him to wit: Food Service Instructor Paul Walton did have indecent contact with inmate Emma Gleckl by fondling and kissing her breasts and engaging in oral sex. Official Oppression:  A person acting in an official capacity or took advantage of another knowing his conduct is illegal when he subjected another to mistreatment to wit: Paul Walton, Dietary Supervisor of inmate Emma Gleckl, did mistreat her by coercing her to perform oral sex on him.

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in violation of __3123; 3126; 530__and (2); (a-5); (1)of the Act of __Pennsylvania Crimes Code__
(Section)                    (Sub-section)

or the_____Ordinance of _____
(Political Sub-division)

(3) I ask that a warrant of arrest or a summons be issued and that the accused be required to answer the charges I have made.

(4) I, verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa. C.S. §4904) relating to unsworn falsification to authorities.

November 22            , 19 94            _____
(Signature of Affiant)

EXHIBIT
30

AND NOW, on this _____, 19____, I certify the complaint has been properly verified, and that there is probable cause for the issuance of process.

A 340

30-3-03                    _____(SEAL)
(Magisterial District)            (Issuing Authority)  30-3-03

111-86-PO

**CONFIDENTIAL**

Commonwealth of Pennsylvania
Department of Corrections
The State Correctional Institution
 at Cambridge Springs
451 Fullerton Avenue
Cambridge Springs, PA  16403

Contact:  Tammy Gaydos
Public Information
Officer
(814) 398-5446

Internal News Advisory:

Superintendent William J. Wolfe confirmed today that criminal charges were filed against an employee of the State Correctional Institution at Cambridge Springs.

Food Service Supervisor, Paul Walton from Meadville was formally charged by staff of the Department of Corrections Special Investigations Office with Involuntary Deviate Sexual Intercourse, Indecent Assault, and Official Oppression.

These charges were filed by the Special Investigations Office after consultation with the Crawford County District Attorney.

Superintendent Wolfe said, the charges are the end result of a month long continuing internal investigation alleging improper contact with an inmate.  Wolfe said, in line with the Department of Corrections policy the employee is suspended without pay pending internal administrative proceedings.  These internal proceedings are separate from outside criminal proceedings.

William J. Wolfe
Superintendent

Tammy L. Gaydos
P.I.O.

**CONFIDENTIAL**

**CONFIDENTIAL**

COMMONWEALTH OF PENNSYLVANIA
SCI-Cambridge Springs
November 29, 1994

**SUBJECT:**   **Pre-Disciplinary Conference**
**Paul Walton**

**TO:**    William J. Wolfe
Superintendent

**FROM:**    Charles Utz
Deputy for Centralized Services

On November 22, 1994, at 10:00 a.m., a Pre-Disciplinary Conference was held for Mr. Paul Walton, Food Service Supervisor,  in the office of the Superintendent.  Mr. Walton and his Union representative, Mr. Dennis Tipton, President of Local 2367 ASFME were present at the beginning of the Conference.

The Committee members present were as follows:  Chairman, Charles Utz, Deputy Superintendent for Centralized Services, Victoria Kormanic, Deputy Superintendent for Facility Management, Roger Cyr, Personnel Officer.  Management's witnesses present were as follows:  Mike Wolanin, Special Investigator, Vaughn Davis, Director Special Investigations Office, Captain Keith Bartlett, Intelligence Captain.

The introduction of Committee members, Managements witnesses were made by the Chairman as well as the introduction of Mr. Walton and his Union representative Mr. Tipton.

The Chairman ask Mr. Walton if he had received 48 hours notice of the Conference. Mr. Walton stated "No" but waived the 48 hours and requested to continue the Conference.

The Chairman attempted to describe the purpose of the Conference but Mr. Tipton demanded the complete report of the investigation, the report of the polygraph and the inmate witnesses names.  Mr. Tipton was informed that both he and Mr. Walton had received the charges and a brief written statement of allegations that prompted his suspension in the Notice of the Pre-Disciplinary Conference.

Mr. Tipton stated that this was a bunch of "Bullshit".  The Chairman cautioned Mr. Tipton of his language and stated he wished to continue the conference without such language.

34  342

**Pre-Disciplinary Conference**
**Page 2.**

Mr. Tipton insisted that he receive the entire investigation report and the report of the polygraph. He was reminded that he had received the Pre-Disciplinary Conference Notice which contained the information that he would receive.

Mr. Tipton stated that "If you jerks will not give up the information we will leave". Mr. Tipton was reminded that the Committee was not jerks and that he has the information that is needed for this conference by the Chairman. Mr. Tipton again stated that if you don't give us the "reports, we are out of here!" With that Mr. Tipton and Mr. Walton left the room.

It was decided to continue the Conference in the absence of Mr. Walton and his representative, Mr. Tipton, because they were given the opportunity to attend the Conference, to hear witnesses statements and for Mr. Walton to make statements on his behalf. The Union representative would have also been able to make statements on Mr. Walton's behalf.

The Pre-Disciplinary Conference was continued with Mr. Mike Wolanin, citing the Report of the Special Investigation, Case #94F091, dated November 18, 1994. This report was prepared by Special Investigator, Mike Wolanin.

This report charged Mr. Walton with a Violation of the Department of Corrections Code of Ethics, Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees or members of their families."

The Special Investigator's report Case #94-F-091 was read into the record. Please refer to the report for specifics.

Mr. Vaughn Davis supported the allegations noted in the report and reported that inmate Emma Glecki listed the events in a written statement which was signed by her and witnessed by Mr. Wolanin.

Management witnesses left the room while the Committee finalized the following recommendation:

> It was the unanimous decision of the Pre-Disciplinary Committee to recommend termination of Mr. Walton's employment based on the information contained in the investigation report. Mr. Walton refused to take a polygraph and refused to produce any reasonable evidence to dispute the allegations.
>
> In view of the information presented by Special Investigator Mike Wolanin and by Vaughn Davis, Director Special Investigations Office, the Committee finds enough evidence to terminate Mr. Walton.

35 343

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
December 5, 1994

**SUBJECT:** Request to Dismiss Employee - Paul L. Walton, Corrections Food Service Supervisor, (Permanent Status); SSN: 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; Appointed: 3-27-92

**TO:**  Joseph D. Lehman        **ATTN:** Daniel R. Tepsic, Director
        Commissioner                   Bureau of Human Resources

**FROM:**  William J. Wolfe
          Superintendent

Corrections Food Supervisor, Paul Walton, was suspended (pending investigation) on November 10, 1994 due to alleged violation of The Department of Corrections Code of Ethics.

The investigation was conducted by the Office of Special Investigations which found alleged violation of The Department of Corrections Code of Ethics, Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families."

A Pre-Disciplinary Conference was held on November 22, 1994 to investigate the following charge:

> Inmate Emma Gleckl #OB9927 gave a written statement admitting a relationship with Paul Walton of a sexual nature, whereas, on or about February 23, 1994 through August 1994, on four occasions Paul Walton received oral sex from Inmate Gleckl. Additionally on or about March 5, 1994, Paul Walton pressed his body against Inmate Gleckl's body, pinning her against the tray rail in the Dietary serving area, pulled her shirt and bra up and fondled and kissed her breasts, Mr. Walton also put his hands down the front of her pants during this same occasion. Inmate Gleckl told Paul Walton that "she wanted to leave" and Mr. Walton stated that "she wasn't going yet, and if she did she would be going to the RHU."

A 344

36

Joseph D. Lehman
Daniel R. Tepsic
Page 2
December 2, 1994

During the Pre-Disciplinary Conference, on the advise of his Union Counsel, Dennis Tipton, Local 2367, Paul Walton got up and walked out of the conference. The Pre-Disciplinary Conference was held in abstinentia, hearing the results of the investigation given by Director, Vaughn Davis and Special Investigator, Michael Wolanin.

On November 22, 1994, Mr. Walton was charged with violating the following Pennsylvania Crimes Code Numbers:

    3123 - Involuntary Deviate Sexual Intercourse, a felony of the first degree

    3126 - Indecent Assault, a misdemeanor of the second degree

    5301 - Official Oppression, a felony of the first degree.

A hearing on the above listed charges will be held on December 09, 1994.

Due to the nature of the accusations, Corrections Food Service Supervisor Paul Walton's conduct has brought discredit to his profession, his responsibilities, The Department of Corrections, and public service at large. We feel that he has lost all credibility and trustworthiness and has sustained irreversible damage in regard to his ability to effectively carry out his duties and responsibilities in a correctional institution.

In view of the above, I request approval to terminate Corrections Food Service Supervisor Paul Walton (Permanent Status).


cc:  Deputy Commissioner Fulcomer
     Timothy Musser
     Roger Cyr



A 345

37

DEPARTMENT OF CORRECTIONS
SCI Cambridge Springs
January 06, 1995


**Subject:**   **STEP ONE EXCHANGE OF INFORMATION**
Paul Walton - Suspension/Termination
94001-N2 dated 11-21-94

**To:**        Edward L. Scurry
Council Representative
District Council 85 AFSCME

**From:**      Roger Cyr
Personnel Officer
SCI-Cambridge Springs


In compliance with First step Grievance Procedures, the
attached information is being relinquished by Management
to the Union on this date in regards to Paul Waltons
Suspension/Termination - Grievance Number 94-01-N2
dated 11-21-94.

The attached information consists of:

1.   Criminal Complaint (Police)
A.   Incident Number:  94-F-091

2.   OTN E 181844-5  page 1

3.   OTN E 181844-5  page 2  Report of Judicial Criminal
Proceedings.


cc: Supt Wolfe
Deputy Utz
Labor Relations
File


A 346

41

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI-CAMBRIDGE SPRINGS**
**February 14, 1995**

**SUBJECT:   PAUL WALTON'S UNEMPLOYMENT**
**COMPENSATION APPEAL  HEARING**

**TO:**      William J. Wolfe
            Superintendent

**FROM:**    Roger D. Cyr Jr.
            Personnel Officer

Please be advised that the Unemployment Appeal Hearing for Paul Walton
will be held at SCI-Cambridge Springs on March 1, 1995 at 10:00 a.m. in the
Superintendent's Office.

We will have a preliminary meeting the afternoon of February 28, 1995 with
Steve Miller and Mike Wolanin.

RDC/afg

cc:   Deputy Utz
      Deputy Kormanic
      Mr. Steve Miller
      Mr. Mike Wolanin
      file

A 347
42

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**SCI-CAMBRIDGE SPRINGS**
**February 14, 1995**

**SUBJECT:   PAUL WALTON'S TRIAL**

**TO:**        William J. Wolfe
              Superintendent

**FROM:**      Roger D. Cyr Jr.
              Personnel Officer

It has been reported to me by the Office of Special Investigations that Mr. Walton's trial has been set for the March term of criminal courts which is March 13 through March 25, 1995.

I will inform you of our obligations as more information becomes available.

RDC/afg

cc:   Deputy Utz
      Deputy Kormanic
      file

A 348
43   548

FILED

'95 MAY 18  PM 5 42

CLERK OF COURTS
CRAWFORD COUNTY, PA

# VERDICT

**COMMONWEALTH**

vs.

PAUL WALTON

Charge: Involuntary Deviate Sexual
Intercourse;

Indecent Assault;
Official Oppression

Court of Common Pleas
of Crawford County
Criminal

No. _1995-23_

Now, _5-18_ 19_95_ at _5:10_ o'clock, P.M.

we, the Jurors empaneled in the above entitled case, do, upon
our solemn oaths by us taken, say that we find the Defendant

Count 1 - Involuntary Deviate Sexual Intercourse-    NOT Guilty

Count 2 - Indecent Assault-    Guilty

Count 3 - Official Oppression-    NOT Guilty

_David J. Browning_ _____ Foreman

Date & Time Jury Drawn: _5-15-95 at 10:23 A.m._

Date Trial Commenced: _5-15-95_

Date Case to Jury: _5-18-95_

Date & Time Verdict: _5-18-95    5:10 p.m._    A 349

Date & Time Verdict Returned: _5-18-95    5:21 p.m._

IN THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY, PENNSYLVANIA
Criminal Division

COMMONWEALTH                    :    1995 - 23
                                :
vs.                             :
                                :
PAUL WALTON                     :    INDECENT ASSAULT

### S E N T E N C E

Gordon R. Miller, P. J.

        AND NOW, July 10, 1995, after a verdict of guilty
of indecent assault a misdemeanor of the second degree.  The
sentence of the Court is that you pay the costs, pay a fine of
$500, and undergo imprisonment in the Crawford County Jail for a
minimum period of 3 months and a maximum period of 24 months less
one day.

        You shall be entitled to work release privileges for 5
days per week provided your jail conduct is perfect.  This
sentence takes effect immediately.  However, incarceration is
deferred.  You shall report to the jail when you are notified to
appear by the Work Release Director.  The Work Release Director
shall call you at home at 337-2239 or at work at 337-3778.  He
shall give you at least 48 hours advance notice.  When you enter
the jail, you shall be substance free.  You shall not have
consumed any alcoholic beverages, intoxicating liquors, beer, or
wine nor any nonprescribed drugs or medications within 24 hours
from the time you enter the jail.  The Warden shall administer
tests to determine if you have violated this restriction.  If so,
work release privileges shall be withdrawn instantly and you
shall serve your sentence in the general population.

                    BY ORDER OF THE COURT,

                    _____
                                        P. J.

Attorney for Commonwealth:
DOUGLAS W. FERGUSON, A.D.A.
Attorney for Defendant:
R. CHARLES THOMAS, ESQ.
m

A 350



## OFFICE OF THE DISTRICT ATTORNEY
CRAWFORD COUNTY COURT HOUSE
MEADVILLE, PENNSYLVANIA 16335-2696
814-333-7455   800-982-9019  Fax 814-336-4225

JOHN M. DAWSON
District Attorney
DOUGLAS W. FERGUSON
First Assistant District Attorney

May 25, 1995

PAULA C. CONSENZA
ROBERT J. FELTON
JOHN WESLEY ROWDEN
MARK D. WAITLEVERTCH
Assistant District Attorneys

Emma Gleckl
State Correction Inmate
Cambridge Springs, PA

Re:  *Commonwealth vs. Paul Walton*
1995-23

Dear Emma:

Please be advised that the defendant in the above case was found guilty on Indecent Assault and not guilty on Involuntary Deviate Sexual Intercourse and Official Oppression by a panel of jurors.

As a result of the defendant's guilty verdict sentencing has been set for July 10, 1995 at 1:30 p.m. in courtroom #1.   Your attendance for sentencing is not required but you may be present if you wish.  Should you decide to attend the sentencing, please stop at the District Attorney's Office before Court begins to let me know that you are here.

**If you have restitution due, please complete and return the enclosed claim form within 10 days.  If no restitution is due, please indicate "none due" and return the claim form within 10 days.**

As the victim of a crime, you have the right, if you choose, to make input to the Court regarding the physical, mental and financial effect of the crime upon you and your family.  The Victim Impact Statement is your opportunity to do this.  You may make this input orally in Court at the time of sentencing, or you can put your thoughts in writing, or both.  Also, please submit your written thoughts on side two of the victim claim form.

If you have questions regarding this case, please do not hesitate to contact me in the District Attorney's Office.

Sincerely,

*Angela M O'Barto*

ANGELA M. O'BARTO
Victim Witness Coordinator

Enclosure
c.c.:  Michael Wolanin

A 351

EXHIBIT
31  351

PENCAD-Bayonne,NJ

# Confidential

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
September 19, 1994

SUBJECT:   FACT FINDING ON REPORTED
           INMATE PHYSICAL CONTACT

TO:        SUPERINTENDENT WOLFE

FROM:      KEITH R. BARTLETT
           INTELLIGENCE CAPTAIN

On September 19, 1994, I spoke to Officer Donahue in regards to the incident report that she filed on September 15, 1994. In that report she stated she observed inmate White, OC3674, with her chest and arm in contact with Mr. Marty Miller, Plumbing Supervisor. As Officer Donahue approached, the inmate backed away and Officer Donahue continued to go down the hall, stopping to talk to Mr. Young. Officer Donahue backed out of the room, running into Mr. Miller who put his arm around her and pulled her to him. Officer Donahue addressed Mr. Miller very curtly and wrote the report.

Speaking with Officer Donahue today she does not wish to file sexual harassment charges as she feels she handled that part of the situation to her satisfaction. She was concerned with the security involving the initial encounter between the inmate and Mr. Miller.

I then spoke to Mr. Miller. He did not deny that any of this had happened, and asked if an apology was in order. I told him "Yes" and that "he should be thankful that Officer Donahue didn't want to file charges". I reminded him of Mr. Davis' class which he attended on 9/16/94, and to be careful and to never let an inmate get that close.

I believe Mr. Miller is just overly friendly, and is a "touchy" type of person. I advised him to leave that part of himself outside the fence. I believe no further action is necessary.

KRB/hs

CC:  Deputy Kormanic
     Deputy Utz
     Captain Lazenby
     Mr. Cyr
     File:  ...\919



EXHIBIT
35

352

CONFIDENTIAL

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
May 30, 1995

SUBJECT: Request permission for an investigation

TO:     W.J. Wolfe
        Superintendent

FROM:   R.R. Lazenby
        Intelligence Captain

Request permission to investigate alleged allegations by Inmate Robin Owens OC1447 that Marty Miller is touching inmate. This is all the information a have at the present time. This information as relayed to me by Mr. Allen.

I await your reply.

cc: Deputy Kormanic
    file/MMiller

Capt. L

approved, please keep me advised as to your progress.

cc: file

W J Wolf
5-30-95

A 353

EXHIBIT
41

PENGAD-Bayonne,N.J.

353