

SYNOPSIS

THIS INVESTIGATION WAS AUTHORIZED by Vaughn L Davis Director, Office of Professional Responsibility (OPR) on April 3, 1996. Predicated by a letter to Thomas Fulcomer, Deputy Commissioner of Corrections, from William Wolfe, Superintendent, State Correctional Institution Cambridge Springs

Superintendent Wolfe's letter stated that numerous allegations of sexual misconduct against Plumbing Trades Instructor Martin Miller have surfaced & the requested investigative assistance in this matter.

⊗ X ━━━━━━━━━━ [above written illegible] was interviewed and related that on ☒ numerous occasions. During March 1996, Plumbing Instructor MARTY Miller fondled her breasts, RUBBED her left leg, grabbed and felt between her legs, and told her to ____ him what she got. Miller, ___ pulled his penis out and told her to rub it. This behavior was unwanted by ━━━━━

PENGAD-Bayonne NJ
G.P. EXHIBIT
73
A 403

Pg 2

④ X ██████████████████████████ was
interviewed and reported that on
or about march 22, 1996 as she was
leaving her room in New Womans Dorm,
**STAFF member** Marty Miller intentionally grabbed
her left Breast. This unwarranted
behavior shocked and upset her.

② X ██████████████████████, was
interviewed and reported on numerous
occasions marty miller felt her
breasts and between her legs. Miller
one took her into a back room in
"Freddys House" where he forced her
to perform oral sex on him.

① X ██████████████████████ was interviewed
and reported that while working on
7-1994 marty miller plumbing crew, miller kissed
and grabbed her Breasts and Butt. miller
also on several occasions pulled his penis
out and told her to "feel it"

BUR. OF. SPEC. INVEST.

2

A 404

█████████████████████████, was interviewed
and reported numerous times while
working on marty millers plumbing
crew miller would send her for tools
in order to be alone w/ █████████ miller
also showed pictures of his family to the plumbing crew

████████████████ was interviewed and reported
marty miller Brought in cigarettes for
inmates and once Brought her in a 3.5 oz
container of Imara powder perfume.

████████████████████ was interviewed
and reported that once while working on
a trailer, a wall, miller asked if
his breasts were real and if she could
touch them"

✓ ████████████████████████ was interviewed
and reported observing marty miller touch
and massage ███████████ neck and ███████
back area while miller stood directly against
touching this inmate

██████████████████ was
interviewed and reported Miller always
passed out candy & fireballs to
members of the plumbing crew.

████████████████████████ was
interviewed and reported Marty Miller
always gave candy to inmates in
the plumbing area. Miller once told
her pull her shirt open and reveil
her chest.

███████████████ was interviewed and
reported she was a former inmate who
worked on Marty Miller's plumbing
crew. Miller brought her in Marlboro light
cigarettes on several occasions. Miller would also
rub against her and she has observed the same
in an inappropriate way.

████████████████████, was interviewed and reported
Marty Miller is a plumbing instructor
under his supervision. He has counseled
Miller three times about touching inmates.
He has never instructed Miller to take candy
home that was being given to inmates, as
Miller claims.

4

A 406

████████████████████████████████

was interviewed and reported he is
a co-worker of Marty Miller.
He observed Miller put an arm
around inmate and buy a candy
Freebelly and give them inmate
to

████████████████████████████████

Instructor was interviewed and
reported Marty Miller was too friendly
with the female inmate. He observed
Miller put an arm around inmate
and bring in candy a Freebelly
and give it to inmate.

████████████████████████████████ was interviewed
and reported Marty Miller, while in
the work place has rubbed her back,
arms, and touched her butt. This
unwanted behavior was done in
front of inmates and other staff

A 407

Marty Miller, Plumbing Trades Instructor, was Interviewed. He Denied all allegations against him

on April 11, 1996 ▮▮▮▮▮▮▮ agreed to Polygraph Testing. The results of this test substantiated her statement that Miller forced her to perform oral sex on him

A 408

Miller violated the following section of the Pennsylvania Department of Corrections code of Ethics:

**✗ A-6**

B-6  There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families. This includes, but is not limited to, trading, bartering or receiving gifts, money, and favors from either the inmate or the inmate's friends, relatives, or representatives.

Marty Miller Plumbing Trades Instructor, violated this section by physical (having) contact of a sexual nature of SCI Cambridge Springs Inmate.

Additionally Miller violated this section by bringing gifts of candy, cigarettes and perfume into the institution for inmates.

**B-10 —**

A 409

7

409

B-29 All employees shall comply
and cooperate with internal
investigations conducted under the
authority of the Department of
Corrections, and respond to questions
completely and TRUTHFULLY. Procedure
in cases that may result in
criminal prosecution will include
those rights according to all
citizens of the Commonwealth

MARTIN MILLER, during his interview,
did not respond to questions by
investigators truthfully as
required in this section

Miller violated the following sections
of the Crimes Code of Pennsylvania.

Sect 3123(1)Involuntary Deviate Sexual
Intercourse.
A person commits a felony of the
First Degree when he engages
in Deviate sexual intercourse with
another person by forcible compulsion.

A 410



A-6  Private Employment

No Employee shall engage in or accept private employment or render private services when such employment or service is incompatible or in conflict with the discharge of the employee's official duties or would tend to impair the employee's independent judgement or action in the performance of his duties. Requests for outside employment must be made in compliance with Management Directive 515-.18, Supplementary Employment.

Miller, during his interview, admitted having ownership of an Avon Business. There is no supplemental Employment Form on file for this or any other Business.



B-10   Employee's are expected to treat their peers, supervisors, and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or violence will not be tolerated.

Miller violates this section by his unprofessional and disrespectful conduct in his dealings with five female staff members at SCI Cambridge Springs in front of other staff and/or inmates.

10

SECT 3126 (a)(1) INDECENT ASSAULT

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him, is guilty of indecent assault if he does so without the consent of the other person.

SECT 3127  INDECENT EXPOSURE

A person commits a misdemeanor of the second degree if, for the purpose of arousing or gratifying sexual desire of himself or any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause affront or alarm.

SECT. 5301  OFFICIAL OPPRESSION

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal he subjects another to mistreatment.

11  1413

The Evidence in this case suggests appropriate disciplinary action be taken against MARTIN Miller

12

CONFIDENTIAL

## MARTIN MILLER
### SCI-CAMBRIDGE SPRINGS

April 25, 1996

ATTENDANCE:    Roger Cyr, Deputy Utz, Deputy Kormanic, Captain Lazenby, Michael Wolanin, Martin Miller, Officer Pelletier, Cheryl Donnell

Meeting opened at 2:45 p.m.

Deputy Utz explained to Mr. Miller the reason the meeting was taking place and introduced Committee Members, Mr. Wolanin, and Ms. Donnell.

Deputy Utz: Mr. Miller did you receive 48 hour notice regarding this conference?
Mr. Miller: I received the letter at 4:15 p.m. on Tuesday afternoon.
Deputy Kormanic: We are three hours shy from 48 hours. Mr. Miller do you want to waive the three hours?
Mr. Miller: I'm not worried about three hours.

Deputy Utz: The purpose of this investigation is to present the charges and hear your side of the story, then the committee makes a report and submits this report to Superintendent Wolfe for him to make the final decision. I repeat so you understand, Superintendent Wolfe will make the final decision not us. Mr. Miller, you and Ms. Pelletier may ask questions at any time but these questions must be directed to me, I will in turn, direct them to the other committee members. Is Ms. Pelletier your representative?
Mr. Miller: Yes sir she is.

Deputy Utz: Ms. Donnell will take notes in order to prepare the report which will be submitted to the Superintendent. Do you have any questions?
Mr. Miller: Not at this time.

Deputy Utz read the following to Mr. Miller:

DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 6: "There shall be no fraternization of private relationship of staff with inmates, parolees or members of their families."

Deputy Utz: Due to confidentiality, no inmate or staff names will be released at this time. I'm going to read the following statements which we have received for verifying accuracy:

1.    While working on your plumbing crew we have an inmate witness statement indicating that you kissed her, grabbed her breasts and butt. You also on several occasions pulled out your penis and told her to feel it.



GP EXHIBIT
74
PENGAD-Bayonne.N.J
A 415

Martin Miller Hearing
April 25, 1996
Page 2

Deputy Utz:  Mr. Miller is this statement correct?
Mr. Miller:  Before I answer this, are you asking if this is a true statement?
Deputy Utz:  We are asking did you kiss her, grab her breasts or butt?
Mr. Miller:  Do you mean is this a true statement or are you asking me to answer the charges?
Deputy Utz:  We're asking you to answer the charges.
Mr. Miller:  No.
Deputy Utz:  Mr. Miller did you ever pull down your pants and pull your penis out?
Mr. Miller:  No.  This is the only time I ever was accused of having sex with an inmate.  I went to Captain Lazenby.  People were called into his office and they discussed it.  This inmate was upset that the allegations were made; I then was asked to leave.
Deputy Utz:  Did you ever touch her breasts or body?
Mr. Miller:  No.
Deputy Utz:  Did you ever pull you pants down, pull out your penis and tell her to touch it?
Mr. Miller:  No.

2.   While working on your plumbing crew we have an inmate witness statement indicating, that on numerous occasions you felt her breasts and between her legs.  You also, on one occasion, took her into Kosciusko Hall--"Freddy's House" and forced her to perform oral sex on you.

Deputy Utz:  Is this statement true?
Mr. Miller:  No.  I don't go any place without two inmates, most generally I have three or four with me.
Deputy Utz:  Do you have them with you at all times?
Mr. Miller:  Yes sir.

3.   We have an inmate witness statement indicating that on numerous occasions during March 1996 you fondled her breasts, rubbed her left leg, grabbed and felt between her legs, and told her to "drop her pants and show you what she's got."  On one occasion you pulled your penis out and told her to touch it.

Deputy Utz:  Is this statement true?
Mr. Miller:  No.

4.   We have an inmate statement indicating that you once brought in a 3.5 ounce container of perfume and gave it to her.

**2**  A 416

Martin Miller Hearing
April 25, 1996
Page 3

Deputy Utz: Is this statement true?
Mr. Miller: No. I never brought any perfume to an inmate. I told the investigator I know once I go through the door, I am subject to a search. Anyone in their right mind would never jeopardize their job and subject themselves to being caught with anything.

5. We have an inmate witness statement indicating that once while she was on a ladder painting a wall, you asked if her breasts were real and could you touch them.

Deputy Utz: Is this statement true?
Mr. Miller: No.

6. We have an inmate witness statement indicating that you always passed out candy and fireballs to members of your plumbing crew.

Deputy Utz: Is this statement true?
Mr. Miller: Fireballs no. One morning I brought in a bag of candy. I did not hide it, I put it on the counter at Control. Tom Crowe said I couldn't take it in. He did state I could open it and take out a few. I took a couple of pieces and put them in my coat and took them into work but took the rest of the bag back out to my truck.

Deputy Utz: Did you ever bring in fireballs for the inmates?
Mr. Miller: No.

7. We have an inmate witness statement indicating that you always gave candy to members of your plumbing crew, and once told her to pull up her shirt and reveal her chest.

Deputy Utz: Is this statement true?
Mr. Miller: No.

8. We have witness statements from staff indicating that you were too friendly with inmates and that you brought in candy and fireballs and gave them to inmates.

Deputy Utz: Is this statement true?
Mr. Miller: I don't know who the staff is that made that comment but it is wrong. I never have given candy to inmates.

**3** A 417

Martin Miller Hearing
April 25, 1996
Page 4

Deputy Utz read the following:

THE DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION B, SPECIFIC RULES AND REGULATIONS, NUMBER 29: "All employees shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth."

1.     During your interview you did not respond to questions by the investigator truthfully as required by this section.

Deputy Utz:  Mr. Miller were you truthful when answering any of the questions by the investigator?
Mr. Miller:  All I can say is I don't know which one thought they were God; I answered each question and answered it truthfully.  Where they can make the comment that I didn't, I don't know.  They did not know whether it was a true statement or not.  It is not my style to lie.

Deputy Utz:  Did you bring any candy or cigarettes to inmates?
Mr. Miller:  No sir.
Deputy Utz:  Did you ever bring any make-up powder or perfume and give these to any inmates?
Mr. Miller:  No sir.

Deputy Utz read the following:

DEPARTMENT OF CORRECTIONS CODE OF ETHICS, SECTION A, GENERAL RESPONSIBILITY OF DEPARTMENT OF CORRECTIONS EMPLOYEES, NUMBER 6:  PRIVATE EMPLOYMENT: "No department employee shall engage in or accept private employment or render private services when such employment or service is incompatible or in conflict with the discharge of the employee's official duties or would tend to impair the employee's independent judgment or action in the performance of his/her duties.  Requests for outside employment must be made in compliance with Management Directive 515-.18, Supplementary Employment."

1.     During your interview with the investigator you admitted to ownership of an Avon Business.  There is no approved Supplemental Employment Form on file for this or any other Business.

4  A 418

Martin Miller Hearing
April 25, 1996
Page 5

Deputy Utz: Do you have a Supplemental Employment Form approved by Human Resources?
Mr. Miller: No I don't. The business is in my name but it is my wife's business. I have sold for her, picked up orders and other things for her.
Deputy Utz: The business is in your name?
Mr. Miller: Yes sir. To my knowledge this business has not hurt my work here. If I get called in I come in.
Deputy Utz: Did you apply for a form for approval?
Mr. Miller: I did not. I signed a witness statement to this.

Deputy Utz read the following:

> DEPARTMENT OF CORRECTIONS CODE OF ETHICS SECTION B, SPECIFIC RULES AND REGULATIONS NUMBER 10: "Employees are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated."

> 1.    We have witness statements from female staff members that you rubbed their backs, arms and touched their butts.

Deputy Utz: Mr. Miller at any time did you rub the backs, arms, or touch the butts of any female staff at this institution?
Mr. Miller: I do not recall such an incident.
Deputy Utz: Could you have forgotten about it.
Mr. Miller: I don't believe I would ever forget something like that.

Deputy Utz: Mr. Miller would you like to make a statement on your behalf?
Mr. Miller: Yes sir. I deny these charges. I would not lie here today nor did I lie at previous hearings. I am nervous and upset. The one statement I would like to make is about the penis bit. I have a letter from my doctor, here it is.

(Letter was passed around room.)

Mr. Miller: I gave it to Captain Lazenby who has a copy in my file. I am in the process right now of getting tested, it will be coming from a specialist but I have to wait. This will be done to prove what is in the letter is true. This is not a really an easy subject to talk about.
Deputy Utz: We all understand.
Mr. Miller: I admit bringing in candy and showing it to Control, I never hid that fact. I took it back to my truck. I never gave it to inmates. I'm not stupid and I know the rules. The part about the Avon business, it never entered my mind to have it approved. It is in my name but it is not my business.
Deputy Utz: This is a technical issue.

*5*  A 419

Martin Miller Hearing
April 25, 1996
Page 6

Mr. Miller: I have had it thrown in my face at the last hearing and today. Yes I was suppose to have a form, I did not have it; I admit this.

Deputy Utz requested that the letter from Doctor Suri should be entered in the transcript for our record.
Mr. Miller gave permission. The letter read as follows:

April 23, 1996

To Whom It May Concern:

This is to advise that I saw Mr. Martin Miller on October 17, 1995 for impotence.

Thank you,
Ashok Suri, M.D.

Deputy Utz stated the statements were read to you in order to verify accuracy. I would now like to ask Mr. Wolanin, Special Investigator to speak to you about the investigation.

Mr. Wolanin: On April 3, 1996, I received a letter to Thomas Fulcomer, Deputy Commissioner of Corrections from Superintendent Wolfe, Superintendent at SCI-Cambridge Springs to get involved with this investigation. The Superintendent's letter stated that numerous allegations of sexual misconduct against Plumbing Trades Instructor Martin Miller have surfaced. He requested investigative assistance in this matter. I met with Captain Lazenby for additional information and was updated. I received inmate witness statements which I would like to read to you at this time:

We have a witness statement that was given by an inmate that stated that while working in July 1994 Marty Miller, plumbing crew kissed and grabbed her breasts and butt. Miller, also on several occasions pulled his penis out and told her to feel it.

We have a witness statement that was given by an inmate that stated that on numerous occasions Marty Miller felt her breasts and between her legs. Miller once took her into a rear room in "Freddy's House" where he forced her to perform oral sex on him.

We have a witness statement that was given by an inmate that stated on numerous occasions during March of 1996 Plumbing Instructor Marty Miller fondled her breasts, rubbed her left leg, grabbed and felt between her legs, and told her to drop her pants and show him what she's got. Miller, on one occasion, pulled his penis out and told her to touch it. This behavior was unwanted by this inmate.

*6*  A 420

Martin Miller Hearing
April 25, 1996
Page 7

We have a witness statement that was given by an inmate that stated that on or about March 22, 1996 as she was leaving her room in New Women's Dorm, Marty Miller intentionally grabbed her left breast, this unwarranted behavior shocked and upset her.

We have a witness statement that was given by an inmate that reported numerous times while working on Marty Miller's plumbing crew Miller would send her for tools in order to be alone with the inmate. Mr. Miller also showed pictures of his family to the plumbing crew.

We have a witness statement that was given by an inmate that Marty Miller brought in cigarettes for inmates and once brought her in a 3.5 ounce container of Imara powder perfume.

We have a witness statement that was given by an inmate that, once while working on a ladder painting a wall, Marty Miller asked if her breasts were real and if she could touch them.

We have a witness statement that was given by an inmate that she observed Marty Miller touch and massage another inmate's neck and back area while Mr. Miller stood directly against this inmate.

We have a witness statement that was given by an inmate that stated Mr. Miller always passed out candy and fireballs to members of the plumbing crew.

We have a witness statement that was given by an inmate that she was a former inmate who worked on Marty Miller's plumbing crew. Mr. Miller brought her in Marlboro Light cigarettes on several occasions. Mr. Miller would also rub against her and she had observed the same being done with other inmates in an inappropriate way.

We have a witness statement that was given by staff stating that Marty Miller has been counselled three times about touching inmates and that instructions were never given to Miller to take candy home that was being given to inmates as Mr. Miller claims.

We have a witness statement that was given by staff which states Marty Miller was observed putting an arm around inmates and bringing in candy "fireballs" and giving them to inmates.

We have a witness statement that was given by staff who stated Marty Miller was too friendly with the female inmates. Miller was observed putting his arms around inmates and bringing in candy "fireballs" and giving them to inmates.

**7** A 421

Martin Miller Hearing
April 25, 1996
Page 8

We have a witness statement that was given by staff stating Marty Miller, while in the work place, has rubbed her back, arms, and touched her butt. This unwanted behavior was done in front of inmates and other staff.

Mr. Miller you were interviewed and you denied all allegations against you, yet when we asked you to take a Polygraph Examination you stated you did not have to give it to prove anything.

On April 11, 1996 an inmate agreed to Polygraph testing. The results of this test substantiated her statement that Mr. Miller forced her to perform oral sex on him. Mr. Miller do you desire to make a statement on your behalf?

Mr. Miller: I do.

Ms. Pelletier: I have a couple of things I would like to say. We have many work orders for jobs Marty has done from February, March and April of 1995. Never is he alone, six to seven women assigned to work with him, never less than two. He is never one on one just about everyday. It seems to me he hasn't had a lot of time to be alone with an inmate for this to take place. Another issue is his impotence. Also, Mr. Wolanin did you check to see if the container found on the inmate was sold here. I mean was it something that could have been sold at Commissary?
Mr. Wolanin: Yes we checked the container and it was not sold at this institution.
Ms. Pelletier: Could it have come from SCI-Muncy?
Captain Lazenby: To the best of our knowledge, no.

Ms. Pelletier: As far as questions on asking questions truthfully, Section B #29, how can this prove he wasn't telling the truth? Who is being judge and jury? How can he be proved wrong?
Captain Lazenby:: We have signed statements from staff indicating things Mr. Miller stated he did not do. Why would staff sign statements to say this?
Ms. Pelletier: I think as far as the rubbing of arms and back, we all have been put in situations where we have rubbed each other's arms and backs. Was there sexual harassment charges brought up against Mr. Miller?
Roger Cyr: No.
Ms. Pelletier: Was he ever told I don't like this behavior, stop it?
Mr. Wolanin: Mr. Miller was counselled three different occasions about this.
Mr. Miller: I'd like to make a statement. You stated I have been counselled three times. Is this correct?
Mr. Wolanin: Yes.
Mr. Miller: I'd like to say I have been counselled since I've been here two times. The second time I was told if it happens again I'd be reprimanded and written up. I don't recall touching staff like you say. I was counselled about touching inmates.

Martin Miller Hearing
April 25, 1996
Page 9

Mr. Miller: It is my understanding from sexual harassment class  (they drilled this into us) that they have to tell you if they are being sexually harassed.

Deputy Kormanic: No, they don't particularly if you are in a supervisory position.   An employee may be uncomfortable telling their boss and may go to someone else but they don't have to go directly to you.

Deputy Utz:  Not once but a number of times you have been counselled.

Deputy Kormanic:  We have statements from a large number of inmates and staff, statements which are very similiar.  Why would such a large number of people make these accusations?

Mr. Miller:  Your saying if you get accused, I may touch someone and still be guilty of it even if I don't necessarily mean to.  Terry may I use you as an example.

Deputy Kormanic:  This is not necessary.  We understand what you are saying.

Mr. Miller:  When I am on a job, I try to be polite usually I am too polite.  When I am asked to do a job, maybe I don't realize I am touching when I am.  Maybe you people see it differently.  Maybe I am too friendly but I swear on a stack of Bibles, if that is what you call touching, I am not guilty of that.  I'm polite when I do it.  I ask the person to move so I can help.  If you are talking this kind of touching, I am guilty of this.  I don't know one person in this room who isn't guilty of this.  I know there are rules.  The one comment made about me rubbing someone's back, I was not that close to someone.  No, I am not stupid.

Ms. Pelletier:  There have been quite a few misconducts written by Mr. Miller.  Could this be a retaliation on the inmates part?  I have work orders of other people who worked with him in tight spaces.  Could it be misconstrued?  Because there are bound to be brushing shoulders and touching.  He worked in places which were tight:  showers, toilets, and urinals.  I find it hard to believe working under these conditions would not cause people to touch each other.

Deputy Utz:  Just because the work order states six people on his crew does not indicate six people were in the same stall.

Ms. Pelletier:  I'm not sure I wasn't there.

Deputy Utz:  We understand what your saying, point taken.

Ms. Pelletier:  For dates and times Mr. Miller keeps a record of what he has done.

Deputy Utz:  Does that show day and times he is off?

Ms. Pelletier:  Yes, he has recorded that.  He left early at jobs he has done.

Deputy Utz:  Is that his personal record?

Ms. Pelletier:  Yes.

Deputy Utz:  Mr. Wolanin would you like a copy of the misconducts?

Mr. Wolanin:  I would like all copies of these.

Captain Lazenby:  I will make copies to give to him.

**9** A 423

Martin Miller Hearing
April 25, 1996
Page 10

Mr. Miller: The write-up from the inmate about the Marlboro cigarettes. I know exactly where this came from, Leann Jafka. Leann worked on my crew but left and went to Cosmetology. She kept coming back after she left and asked if she could work with the crews. I said no, once you leave, you can't come back. This is an unauthorized area. She kept doing this, I warned her to stop and she tried to get Mr. Young to let her work. I wrote her up for being in an unauthorized area.

Deputy Kormanic: There is no misconduct in the file.

Captain Lazenby: No. There is no record of this in the file.

Mr. Wolanin: We went through the records and it wasn't found.

Deputy Kormanic: If the misconduct was dismissed, there would be no record of it.

Mr. Miller: I personally feel Ms. Jafka liked Mr. Young and would do anything she could to get close to him. That is why we had to finally put a stop to it. There was a misconduct.

Deputy Utz: Mike did you write the misconduct yourself?

Mr. Miller: Yes sir. I saw it.

Deputy Utz: Did you get a copy back?

Mr. Miller: I don't always get one. No, I don't have a copy, I did not get one. Usually I do after the hearings, sometimes I don't. I questioned this, copies do not always get to us.

Deputy Utz: Ms. Pelletier you mentioned Mr. Miller's schedule and personal record. Do you want us to have a copy of that?

Ms. Pelletier & Mr. Miller: Yes. You can make a copy as long as we get the original back.

Ms. Pelletier: Mr. Miller left at 10:00 a.m. the one morning, the dates aren't right with what you have.

Deputy Kormanic: I understand this.

Deputy Utz: Mr. Wolanin how far back does the investigation go?

Mr. Wolanin: Two years.

Ms. Pelletier: The calendar starts this year.

Deputy Utz: So this will only be partial stuff.

Ms. Pelletier: I have one statement to make in regards to confidentiality. A supervisor gave staff and inmates names, which were supposed to be withheld for obvious reasons. The day Mr. Miller was walked off of the grounds, his name was mentioned in a public place, Erie County Vo-tech. When staff arrived, they were approached and a person stated "Did you know an inmate said that..." and the charges were given to this staff member. I have two statements I can get from witnesses that were there that stated this happened. Staff were approached as soon as they got to class. A Staff member stated "Mr. Miller was walked off of the grounds, inmates said he was having sex with him." I felt this breaches the Code of Ethics. This information should have stayed here, especially when it came from a supervisor.

Deputy Utz: I didn't know this.

*10*    A 424

Martin Miller Hearing
April 25, 1996
Page 11

Deputy Kormanic: There are two issues here. One, if this occurred, it was inappropriate for anyone to go outside and say anything; however, we have no control of what is said on the outside of the institution. Second, this is not in the same realm as the institution's investigation. The facts presented at this hearing stay within the confines of this meeting. **Ms. Pelletier:** I would like you to understand I don't know who is involved in this case. I don't actually know the inmates and staff involved. It is my understanding there is no one situation. One staff member stated Mr. Miller touched her and when she questioned another staff to see if they saw anything, the other staff member did not. The other staff member stated she did not see anything. We just don't want staff thinking that any information concerning this case are being leaked by us.

Deputy Utz: Ms. Pelletier do you have any other statements?
Ms. Pelletier: I guess that is it.
Deputy Utz: Mr. Miller would you like to add anything?
Mr. Miller: I just want to get this whole thing over with. When I get the report from my doctor, who do I send it to.
Deputy Utz: You will send the completed report to Superintendent Wolfe. He will get our recommendation and make a decision. I would like to take the time to remind the committee and everyone here that this is confidential and we want to keep it confidential. The information which was discussed here today is not to be taken to staff, it is to be used for the Superintendent's recommendation only. We will give the records to the Superintendent for his decision. It will take a week to ten days for a decision. Thank you.

Meeting adjourned at 2:30 p.m.

11

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
SCI-CAMBRIDGE SPRINGS
April 25, 1996


SUBJECT:    REQUEST TO DISMISS EMPLOYEE - MARTIN MILLER,
CORRECTIONS PLUMBING TRADE INSTRUCTOR ( REGULAR STATUS);
SSN: 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; APPOINTED: 02/28/94
POSITION NUMBER: 162621

TO:     Martin F. Horn          ATTN:     Daniel R. Tepsic
Commissioner                              Director
                                          Bureau of Human Resources
FROM:   William J. Wolfe
Superintendent

Corrections Plumbing Trade Instructor, Martin Miller,  was suspended (pending investigation) on March 25, 1996 due to alleged violations of the Department of  Corrections Code of Ethics.

The investigation was conducted by The Office of Professional responsibility which found alleged violations of the Department of Corrections Code of Ethics, Section B, Specific Rules and Regulations, Number 6: "There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families." Number 29:  "All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully.  Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth." Number 10: "Employees are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated."  Section A, General responsibility of Department of Correction's Employees, Number 6: Private Employment,  "No Department Employee shall engage in or accept private employment or render private services when such employment or service is incompatible or in conflict with the discharge of the employee's official duties or would tend to impair the employee's  independent judgement or action in the performance of his/her duties.  Requests for outside employment must be made in compliance with management directive 515.18, Supplementary Employment."

A Pre-Disciplinary Conference was held on April 25, 1996 to investigate the following charges:

1.    Inmate Pehlman, OC3351, stated that while working on Mr. Miller's plumbing crew, Mr. Miller kissed her, grabbed her breasts and butt, and on several occasions Mr. Miller pulled out his penis and told her to feel it.

2.    Inmate Vasquez, OC7919, stated that on numerous occasions, Mr. Miller felt her

426

Page 2
April 25, 1996

breasts and between her legs, and on one occasion took her to Kosciusko Hall and forced her to perform oral sex on Mr. Miller.

3.  Inmate Phillips, OC1674, stated that on numerous occasions during March 1996 Mr. Miller fondled her breast, rubbed her left leg, grabbed and felt between her legs, and told her to "drop her pants and show him what she's got", and on one occasion Mr. Miller pulled out his penis and told her to touch it.

4.  Inmate White, OC3674, stated that on one occasion Mr. Miller brought in a 3.5 oz. container of perfume and gave it to her.

5.  Inmate Jackson, OA1441, stated that once while on a ladder painting a wall, Mr. Miller asked if her breasts were real and could he touch them.

6.  Inmate Jones, OB3626, stated that Mr. Miller always passed out candy and fireballs to members of his plumbing crew.

7.  Inmate Maysonet, OB4751, stated that Mr. Miller always gave candy to members of his plumbing crew, and once told her to pull up her shirt and reveal her chest.

8.  Corrections plumbing trade instructor Wayne Young reported that he observed Mr. Miller put an arm around an inmate, and brought candy and fireballs in and gave them to inmates.

9.  Corrections plumbing trade instructor James Stoops reported that he thought that Mr. Miller was too friendly with the female inmates and observed Mr. Miller place his arm around an inmate and bring in candy and fireballs and give them to inmates.

10. During Mr. Miller's interview with the investigator from the office of professional responsibility, Mr. Miller did not respond to questions truthfully.

11. During Mr. Miller's interview, Mr. Miller admitted to ownership of an Avon Business. There is no approved supplemental employment form on file for this or any other business.

12. Corrections Officer Jaqueline Cerne reported that Mr. Miller has rubbed her back, arms and touched her butt. This unwanted behavior was done in/front of inmates and other staff.

A 427

22

Page 3
April 25, 1996

During the Pre-Disciplinary Conference credible evidence was presented by Special Investigator, Michael Wolanin, showing Martin Miller had the opportunity to commit the alleged acts, which is substantiated by staff witness statements.

Due to the nature of the accusations, Corrections Plumbing Trade Instructor Martin Miller's Conduct has brought discredit to his profession, His responsibilities, the Department of Corrections, and public service at large, we feel that he has lost all credibility and trustworthiness and has sustained irreversible damage in regard to his ability to effectively carry out his duties and responsibilities in a Correctional Institution.

WJW/RDC/jdz

cc:     Deputy Commissioner Fulcomer
        Mr. Musser – Labor Relations
        Mr. Cyr

A 428

23



COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA DEPARTMENT OF CORRECTIONS
OFFICE OF PROFESSIONAL RESPONSIBILITY

June 24, 1996

Case Number:         96-F-035
Report Prepared by:  Michael Wolanin, Special Investigator
Allegation:          Violation Code of Ethics

### SUBJECT:

Martin Miller, Plumbing Trades Instructor
DOB:  06/13/50

### COMPLAINANTS / VICTIMS:

Robin Phillips, OC-1674          Colleen Digiovanni, OC-5287
DOB:  06/23/61                   DOB:  02/24/64
SSN:  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                SSN:  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

### LOCATION:

State Correctional Institution Cambridge Springs

APPROVED BY:
    Vaughn L. Davis
    Director
    Office of Professional Responsibility

DISTRIBUTION:
    Commissioner Horn
    File

A 429

26

COMMONWEALTH OF PENNSYLVANIA
Pennsylvania Department of Corrections
July 18, 1996

Case # 96-F-035

SUBJECT(S):     Martin Miller, Plumbing Trades Instructor

COMPLAINANT(S):     Robin Phillips, OC-1674
                    Colleen Digiovanni, OC-5287
                    Allegation ~ Violation Code of Ethics

TO:     William J. Wolfe
        Superintendent
        State Correctional Institution Cambridge Springs

FROM:     Vaughn L. Davis
          Director
          Office of Professional Responsibility

The enclosed report of investigation is being submitted to you for your information.

This report has been reviewed and approved by the Commissioner of Corrections.

The report is CONFIDENTIAL and may not be disseminated to any other agency without the direct approval of the Commissioner.

If you have any questions, please contact me.

VLD/hr

A 430

27

## SYNOPSIS

This investigation was authorized by Vaughn L. Davis, Director, Office of Professional Responsibility, on April 3, 1996, predicated by a letter to Thomas Fulcomer, Deputy Commissioner of Corrections, from William Wolfe, Superintendent at the State Correctional Institution Cambridge Springs.

Superintendent Wolfe's letter stated that numerous allegations of sexual misconduct against Plumbing Trades Instructor Martin Miller had surfaced. He requested investigative assistance in this matter.

Robin Phillips, OC-1674, was interviewed and reported that on numerous occasions during March 1996, Plumbing Instructor Marty Miller fondled her breasts, rubbed her left leg, grabbed and felt between her legs and told her to "drop her pants and show him what she's got". Miller, on one occasion, pulled his penis out and told her to touch it. This behavior was not wanted by Phillips.

Colleen Digiovanni, OC-5287, was interviewed and reported that on or about March 22, 1996, as she was leaving her room in the new womens dorm, staff member Marty Miller intentionally grabbed her left breast. This unwarranted behavior shocked and upset her.

Sylvia Vasquez, OC-7919, was interviewed and reported that on numerous occasions, Marty Miller felt her breasts and between her legs. Miller once took her into a rear room in "Freddy's House" where he forced her to perform oral sex on him.

Lena Pehlman, OC-3351, was interviewed and reported that while working on Marty Miller's plumbing crew, Miller hugged her and grabbed her breasts and butt. Miller also on several occasions, pulled his penis out and told her to "feel it".

Annie Streff, OO-8562, was interviewed and reported that numerous times while working on Marty Miller's plumbing crew, Miller would send her for tools in order to be alone with Robin Phillips. Miller also showed pictures of his family to the plumbing crew.

Jolanda White, OC-3674, was interviewed and reported that Marty Miller brought in cigarettes for inmates and once brought her in a 3.5 ounce container of Imara powder perfume.

Barbara Jackson, OA-1441, was interviewed and reported that once while working on a ladder painting a wall, Marty Miller asked if her breasts were real and if he could "touch them".

Marshell Ferguson, OD-0111, was interviewed and reported observing Marty Miller touch and massage Colleen Digiovanni's neck and back area while Miller stood directly against and touching Digiovanni.

Veronica Jones, OB-3626, was interviewed and reported that Miller always passed out candy "fireballs" to members of the plumbing crew.

A 431

28

Elizabeth Maysonet, OB-4751, was interviewed and reported that Marty Miller always gave candy to inmates in the plumbing area. Miller once told her to pull her shirt open and reveal her chest.

LeAnn Jafko was interviewed and reported that she was a former inmate who worked on Marty Miller's plumbing crew. Miller brought her in Marlboro Light cigarettes on several occasions. Miller would also rub against her and she had observed the same being done with other inmates in an inappropriate way.

Robert Allen, Facilities Maintenance Manager II, was interviewed and reported that Marty Miller is a plumbing instructor under his supervision. He has counselled Miller three times about touching inmates. He has never instructed Miller to take candy home that was being given to inmates, as Miller claims.

Wayne Young, Plumbing Trades Instructor, was interviewed and reported that he is a co-worker of Marty Miller. He observed Miller put an arm around inmates and bring in candy "fireballs" and give them to inmates.

James Stoops, Plumbing Trades Instructor, was interviewed and reported that Marty Miller was too friendly with the female inmates. He observed Miller put an arm around inmates and bring in candy "fireballs" and give them to inmates.

Jacqueline Cerne, CO I, was interviewed and reported that Marty Miller, while in the work place, had rubbed her back, arms and touched her butt. This unwanted behavior was done in front of inmates and other staff.

Marty Miller, Plumbing Trades Instructor, was interviewed. He denied all allegations against him.

On April 11, 1996, Sylvia Vasquez, agreed to polygraph testing. The results of this test substantiated her statement that Miller forced her to perform oral sex on him.

Miller violated the following sections of the Pennsylvania Department of Corrections Code of Ethics:

A-6    Private Employment

No employee shall engage in or accept private employment or render private services when such employment or service is incompatible or in conduct with the discharge of the employee's official duties or would tend to impair the employee's independent judgement or action with performance of his duties. Requests for outside employment must be made in compliance with Management Directive 515.18, Supplementary Employment.

3

A 432

29

Miller, during his interview, admitted having ownership of an AVON business. There is no supplemental employment form on file for this or any other business.

> B-6   There shall be no fraternization or private relationship of staff with inmates, parolees, or members of their families. This includes, but is not limited to, trading, bartering or receiving gifts, money and favors from either the inmate or the inmate's friends, relatives or representatives.

Marty Miller, Plumbing Trades Instructor, violated this section by having physical contact of a sexual nature with SCI Cambridge Springs inmates; Sylvia Vasquez, Robin Phillips, Colleen Digiovanni and Lena Pehlman. Additionally, Miller violated this section by bringing gifts of candy, cigarettes and perfume into the institution for inmates.

> B-10   Employee's are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated.

Miller violated this section by his unprofessional and disrespectful conduct in his dealings with five female staff members at SCI Cambridge Springs occurring in front of other staff and/or inmates.

> B-29   All employees shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights according to all citizens of the Commonwealth.

Martin Miller, during his interview, did not respond to questions by this investigator truthfully as required in this section.

Miller violated the following sections of the Crimes Code of Pennsylvania:

Section 3123 (1) Involuntary Deviate Sexual Intercourse.

A person commits a felony of the First Degree when he engaged in deviate sexual intercourse with another person by forcible compulsion.

4

A 433

30

Section 3125 Aggravated Indecent Assault

A person commits a felony of the second degree when he engages in penetration, however slight of the genitals or anus of another with a part of the actor's body for any purpose other than good faith, medical, hygienic, or law enforcement procedures if he does so without consent of the other person.

Section 3126 (a,1) Indecent Assault.

A person who has indecent contact with another not his spouse, or causes such other to have indecent contact with him, is guilty of indecent assault if he does so without the consent of the other person.

Section 3127 Indecent Exposure.

A person commits a misdemeanor of the Second Degree if, for the purpose of arousing or gratifying sexual desire of himself or any person other than his spouse, he exposes his genitals under circumstances in which he knows his conduct is likely to cause afront or alarm.

Section 5301 Official Oppression.

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the Second Degree if, knowing that his conduct is illegal, he subjected another to mistreatment.

Evidence in this case suggests appropriate disciplinary action be taken against Martin Miller.

5

A 434

31

TABLE OF CONTENTS

<u>DETAILS</u>:

1.    Request for Investigation

2.    Review of Superintendent Wolfe's Letter

<u>INTERVIEWS</u>:                                   <u>PAGE</u>:

1.    Robin Phillips, OC-1674               8, 9

2.    Colleen Digiovanni, OC-5287           9, 10

3.    Sylvia Vasquez, OC-7919               10, 11

4.    Lena Pehlman, OC-3351                 11

5.    Anne Streff, OO-8562                  11, 12

6.    Jolanda White, OC-3674                12

7.    Barbara Jackson, OA-1441              12, 13

8.    Marshell Ferguson, OD-0111            13

9.    Veronica Jones, OB-3626               13

10.   Elizabeth Maysonet, OB-4751           14

11.   Diane Kaiser, OC-4259                 14

12.   LeAnn Jafko                           14, 15

13.   Robert Allen, Facilities Maintenance Manager II  15

14.   Melinda Adams, Clerk Typist II        15, 16

15.   Wayne Young, Plumbing Trades Instructor   16

16.   James Stoops, Plumbing Trades Instructor  16

17.   Laurel Donahue, CO I                  16, 17

18.   Jacqueline Cerne, CO I                17

6

A 435

32

19.    Renate Skrzypczak, CO I                     17, 18

20.    Marcia Lazenby, Correctional Employment / Vocational Counselor
                                                   18
21.    Diane Anthony, Clerk Typist II             19

22.    Martin Miller, Plumbing Trades Instructor   19, 20

## ACTION TAKEN:

1.    Review of LeAnn Jafko's Institutional File

2.    Review of Martin Miller's Personnel File

3.    Review of Polygraph Examination performed on Sylvia Vasquez, OC-7919, on April
       11, 1996

A 436

33

DETAILS:

1.   This investigation was authorized by Vaughn L. Davis, Director, Office of Professional Responsibility, on April 3, 1996, predicated by a letter to Thomas Fulcomer, Deputy Commissioner of Corrections, from William Wolfe, Superintendent at the State Correctional Institution Cambridge Springs.

On April 4, 1996, Superintendent Wolfe's letter was reviewed. The review disclosed the following:

> Superintendent Wolfe was requesting investigative assistance from the Office of Professional Responsibility due to numerous allegations of sexual misconduct against Plumbing Trades Instructor Martin Miller.

> During the past several years, similar allegations against Miller had surfaced but were dropped by local investigators due to the lack of evidence.

A copy of Wolfe's letter is appended as ATTACHMENT # 1.

INTERVIEWS:

1.   Robin Phillips, OC-1674
      DOB:  06/22/61
      SSN:  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

Robin Phillips is a thirty-four year old female serving a 5 to 10 year sentence for Involuntary Deviate Sexual Intercourse from Clearfield County. Her minimum sentence expires on October 22, 1998, and her maximum sentence expires on October 22, 2003. She is a custody level two classification.

On April 4, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:

> She was an inmate worker on Marty Miller's plumbing crew.

> On Friday, March 22, 1996 between 9:00 am and 9:30 am she, inmate Annie Streff and her supervisor, Marty Miller, were working on patching a tub in a bathroom on the third floor of the new womens dorm. After a weekly fire drill that was held at the building, Miller sent Streff to get some tool that he said was forgotten.

> She continued working on the tub and was bent over the side when Miller suddenly reached around with his right hand and began fondling her right breast. Miller then told her to show "him what she's got". She said no.

8

The same day between 2:00 and 2:30 pm, she, Marty Miller, and inmate Annie Streff went to Luter Hall because of a boiler going down. After the boiler was running, Streff left to be with the rest of the crew. Miller called her to a bathroom and told her to "show him what she's got". She said no, that she was scared. She left the area.

On Monday, March 25, 1996, while finishing the same tub in the new womens dorm third floor, she was bent over working when Miller, with his right hand, reached over and fondled her right breast. She told him not to do this and tried to get away but Miller would not listen.

At approximately 2:15 pm that same day while working on a sink in the inmate bathroom in Dietary, Miller pushed his right hand through the buttons of her shirt and fondled her right breast. Miller also rubbed her left leg.

Around the beginning of March 1996, she was working on a shower in Luter Hall. Miller stood in the doorway of the shower, pulled his penis out and told her to "touch it".

After that incident, she was working on a toilet in Luter Hall. Miller walked up to her, grabbed and felt between her legs. She told him no and tried to kick his hand away but Miller wouldn't stop until someone came into the bathroom. The same thing happened when she and Miller were working on a staff bathroom in Luter Hall.

Once, while working on a shower in Luter Hall, Miller told her to show him her breasts. She told him no because she was not that way. As she turned away from him, Miller grabbed her breast without her consent. The next day, while working in the same area, Miller grabbed her between her legs and touched her breast with his right hand. She told him to stop but he wouldn't. Miller also tried to kiss her on the left cheek but she turned her head so he couldn't do it.

Every chance Miller had, he would touch her breasts. It didn't matter where they were at. Miller always made sure they were alone.

A copy of Phillip's signed statement is appended as ATTACHMENT # 2.

2.    Colleen Digiovanni, OC-5287
      DOB: 02/24/64
      SSN: 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

Colleen Digiovanni is a thirty-two year old white female serving a 4 to 8 year sentence for Drug Violations from Philadelphia. Her minimum sentence expires July 13, 1998, and her maximum sentence expires July 13, 2002. She is a custody level two classification.

On March 25, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:

A 438

35

On March 22, 1996, she was in her room, the new womens dorm # 36, when Marty Miller approached her and asked how she liked her job in the kitchen. Miller kept hanging around outside her door looking in and then asked her when she was leaving the floor. She would not answer.

She left her room and started to the restroom when Miller intentionally grabbed her left breast with his hand. She was upset and scared.

On Monday, March 25, 1996, at approximately 9:00 am, Miller came past her room and commented that when she was ready to get dressed "let him know and he would come in and see that everything was in order". She became upset and left the room.

Shortly after, she reentered her room and was looking out the window. Miller entered the room and stood right next to her.

She had to leave her room and go to the restroom. She told her neighbor to watch in case Miller came in because she was afraid.

As she was getting her jacket and preparing to leave the building, Miller came by and said "I'll be here now so remember to let me know when you get dressed so I can make sure everything is intact".

A copy of Digiovanni's signed statement is appended as ATTACHMENT # 3.

3.    Sylvia Vasquez, OC-7919
      DOB: 08/29/57
      SSN:  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

On April 10, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:

She worked on Marty Miller's plumbing crew from July 1995 thru February 5, 1996.

Numerous times Miller would bring in Newport cigarettes and give them to her. Miller would tell her that she would never get write-ups for anything she did so the Parole Board would always have a good report.

Shortly after starting work for Miller, she would receive jobs to be alone. Miller would come to her, feel her breasts and privates between her legs. She told him not to do this. Miller's reply was not to worry that if they got caught, she would not get a write-up and always continue to get good work reports and raises.

Miller brought her AVON cosmetic products as gifts; nail polish, powder perfume and eye makeup were among them.

In September 1995, Miller told her she had to leave the shop with him. She did not

10

A 439

36

want to go. Miller took her in a back room in "Freddy's House", pulled his zipper down, his penis out and pushed her head down on his penis. She was scared and did not want to do it. After a minute or two, he let her head up and she ran away back to the shop.

Once in the new womens dorm third floor, Miller called her into a room with him. As she was against a wall, Miller put his fingers into her vagina. She told him not to do it and ran away.

In August 1995 in the new womens dorm, Miller pulled his penis out and said he wanted to "fuck" her. He pushed her over a table and attempted to pull her pants down. She got away and ran.

A new girl named Robin came to the crew in the first part of the year. She saw Miller start to act toward Robin like he did with her. She knew Robin was next.

A copy of Vasquez's signed statement is appended as ATTACHMENT # 4.

4.    Lena Pehlman, OC-3351
      DOB: 05/21/53
      SSN: 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

On April 8, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:

She worked on Marty Miller's plumbing crew on two different occasions, once in 1994 and again in 1996.

Miller hugged her, grabbed her breasts, butt and once tried to kiss her on the lips but she turned and he kissed her cheek.

On different occasions, Miller would pull his penis out and tell her to feel it.

Miller brought in candy for the plumbing crew.

She had observed Miller touch other inmates by the breasts and butt.

A copy of Pehlman's signed statement is appended at ATTACHMENT # 5.

5.    Annie Streff, OO-8562
      DOB: 09/21/46
      SSN: Unknown

On April 9, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:
      She worked on Marty Miller's plumbing crew.

A 440

37

Numerous times Miller sent her for tools so he could be alone with inmate Robin Phillips.

She observed Miller massage Robin Phillips' shoulders. Miller also massaged her shoulders a few times.

A copy of Streff's signed statement is appended as ATTACHMENT # 6.

6.    Jolanda White, OC-3674
      DOB: 05/25/69
      SSN: 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

On April 10, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:

She worked on Marty Miller's plumbing crew from August 1994 thru March 1996.

Miller was extremely friendly toward her. She observed Miller touch inmates.

Miller would bring in cigarettes for inmate Sylvia Vasquez.

Miller brought her in Imara powder perfume once.

A copy of White's signed statement is appended as ATTACHMENT # 7.

7.    Barbara Jackson, OA-1441
      DOB: 09/26/54
      SSN: 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

On April 9, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated. She advised the following:

She started working on Marty Miller's plumbing crew in April 1995.

After approximately two weeks on the job, while working on a ladder painting in the boiler room, Miller approached her when no one else was around.

Miller asked her if her breasts were "real" and could he touch them. She told him no.

Miller asked her if she would tell anyone about this. She told him no but if it happened again, she would.

Numerous times she observed Miller put his arms around and hug inmates. It

12

appeared that he received pleasure from this.

A copy of Jackson's signed statement is appended as ATTACHMENT # 8.

8.    Marshell Ferguson, OD-0111
      DOB:  05/26/47
      SSN:  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

On April 8, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated.  She advised the following:

On Friday, March 22, 1996, at approximately 9:30 am she was standing in the doorway of her room, # 37, in the new womens dorm talking to Colleen Digiovanni. Colleen was in the bathroom and her room is directly across from this area.

Staff member Marty Miller came down the hallway and went into the bathroom behind Colleen.

She observed Miller move closer to Colleen, talking softly, massaging and touching her hair and neck area.  Miller's body was against and touching Colleens.

On Monday, March 25, 1996, Colleen came and asked her to go into the bathroom and watch because Miller may be around.

A copy of Ferguson's signed statement is appended as ATTACHMENT # 9.

9.    Veronica Jones, OB-3626
      DOB:  02/28/71
      SSN:  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

On April 10, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated.  She advised the following:

She started working on Marty Miller's plumbing crew in June 1995.

On her first day, Miller caressed and rubbed her back up and down softly.

Miller would pass out "hot fireball" candy to all the girls on the crew and would sometimes ask her what would she give him for the candy.

Miller told her of the desire to buy some "black pussy" and would rub against her in an undesirable way.

A copy of Jones' signed statement is appended as ATTACHMENT # 10.

13

A 442

39

10.    Elizabeth Maysonet, OB-4751
       DOB: 03/28/69
       SSN: 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

On April 8, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated.  She advised the following:

    She worked on Mr. Stoops plumbing crew.

    When Stoops did not come in to work, Marty Miller would sometimes fill in.

    Miller always gave candy to inmates, including her, that was kept in his desk.

    Once, while talking to Miller in the plumbing office, Miller asked her to pull her shirt open and reveal her chest.

    She heard Miller had brought cigarettes and nail polish in for an inmate and had "felt" other inmates.

A copy of Maysonet's signed statement is appended as ATTACHMENT # 11.

11.    Diane Kaiser, OC-4259
       DOB: 06/13/54
       SSN: 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

On April 12, 1996, the above inmate was interviewed by this investigator at SCI Cambridge Springs where she is incarcerated.  She advised the following:

    She worked on Marty Miller's plumbing crew from February thru the end of March 1996.

    Once, while working on a shower in Luter Hall, Miller came up behind her, leaning into and touching her.

    She felt Miller was "getting fresh" with her in this uncomfortable behavior.

    She observed Miller and inmate Robin Phillips together a lot and they appeared inseparable.  This relationship appeared to be more that just a staff/inmate relationship.

12.    LeAnn Jafko
       DOB: 04/28/68
       SSN: 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

On April 9, 1996, the above individual was interviewed by this investigator at her residence in Albion, PA.  She advised the following:

A 443

14

40

She was a former SCI Cambridge Springs inmate who worked on Marty Miller's plumbing crew.

Miller brought in cigarettes for her and other inmates.

On several occasions, Miller would rub against her in an inappropriate manner. Miller did this to other inmates also.

On or around July 28, 1994, Miller kissed her on the cheek for "good luck" as she was leaving the crew.

A copy of Jafko's signed statement is appended as ATTACHMENT # 12.

13.    Robert Allen, Facilities Maintenance Manager II
        DOB: 04/13/54

On April 12, 1996, the above employee was interviewed by this investigator at SCI Cambridge Springs where he has been employed for 4 years.  He advised the following:

Marty Miller has been a plumbing instructor under his supervision for the past two years.  Miller is not one of his best workers and does "less than quality" work.

He has observed Miller put his arm around inmates and has talked to this employee three times regarding his actions.

He has never counselled Miller about giving inmates candy nor ever directed this employee to take candy home that was brought in.

Maintenance Secretary Pauline Blood and Melinda Adams have had problems with Miller.

14.    Melinda Adams, Clerk Typist II
        DOB: 01/14/68

On April 13, 1996, the above employee was interviewed by this investigator at SCI Cambridge Springs where she has been employed for 2 years.  She advised the following:

She presently works as a secretary in the maintenance office under Robert Allen.

In September 1995, Marty Miller approached her just prior to starting maintenance and said "I heard you're going to be the new sexretary".  Miller then walked away.

Around the middle of September 1995, while working at her desk, Marty Miller approached her and put his arms around her and rubbed her shoulders.

15

41

Miller also asked her the question "Do you fool around". She replied that she was married. Miller again asked if she liked to fool around.

Miller's actions and comments toward her were inappropriate and unwelcomed by her in the work place.

15.    Wayne Young, Plumbing Trades Instructor
        DOB: 05/05/60

On April 12, 1996, the above employee was interviewed by this investigator at SCI Cambridge Springs where he has been employed for 2 years. He advised the following:

He is a co-worker of Marty Miller. They do not socialize outside of work.

He has observed Miller working one-on-one with inmates.

Miller is overly friendly with all females and he has observed Miller put an arm around an inmate more than once.

He has observed Miller get close and whisper in an inmates ear. He has told Miller at least once about getting to close to inmates.

He has observed Miller bring in candy "fireballs" and give to inmates.

16.    James Stoops, Plumbing Trades Instructor
        DOB: 04/08/60

On April 12, 1996, the above employee was interviewed by this investigator at SCI Cambridge Springs where he has been employed for 3 years. He advised the following:

He is a co-worker of Marty Miller.

He has observed Marty Miller one-on-one with inmate Robin Phillips at the maintenance desk.

He has observed Miller put an arm around inmates.

He has observed Miller give candy "fireballs" to inmates in the plumbing shop.

Miller was too friendly with the female inmates.

17.    Laurel Donahue, CO I
        DOB: 06/08/54

On April 12, 1996, the above officer was interviewed by this investigator at SCI Cambridge Springs where she has been employed for 2 ½ years. She advised the following:

16

A 445

42

On September 15, 1994, she was working as the 6 to 2 shift rover officer.

Upon walking through Luter Hall toward the third floor, she noticed the stairwell door propped open. She observed Marty Miller sitting at a chair with inmate Jolanda White directly behind.

She continued up the stairwell as White and Miller jumped up in surprise.

She walked down the hallway continuing her rounds, as it was rumored marijuana and condoms were found in the building.

As she was exiting one of the rooms, she turned and ran directly into Miller.

Miller put an arm around her, pulled her tight against him and commented "I just about took five years off your life". She replied to Miller "Don't you ever do that again or I'll take five years off your life".

She finished her rounds of the building.

A former inmate, Mika Carter, told her once that "If she ever told what she knew about Miller's sexual acts, she would loose her parole date".

18.    Jacqueline Cerne, CO I
        DOB: 04/23/67

On April 12, 1996, the above officer was interviewed by this investigator at SCI Cambridge Springs where she has been employed for 14 months. She advised the following:

In November 1995, while working the sally port area, Marty Miller approached her. Miller touched her hand, arms and began rubbing her back. She was shocked at Miller's actions toward her.

Around January or February 1996, she was working the Luter 3 Hall day room. Marty Miller approached her and started grabbing her radio holder on her belt. During Miller's actions, this employee was also touching her butt. She grabbed Miller's arm and pushed it and said to stay away.

This inappropriate behavior was done in front of inmates and has no role in the work place.                                                          .

19.    Renate Skrzypczak, CO I
        DOB: 05/25/56

On April 3, 1996, the above officer was interviewed by this investigator at SCI Cambridge Springs where she has been employed for 1 year. She advised the following:

17

A 446

43

She works as a corrections officer in the new womens dorm, 3-A floor.

On Friday, March 22, 1996, Marty Miller and his plumbing crew were on the floor fixing a tub.

She was talking to inmate Robin Phillips, who was standing against a wall, when Miller approached them, saying what a great worker Phillips was. Miller was patting Phillips' shoulder. Miller then left only after brushing against Phillips' chest.

On Monday, March 25, 1996, Miller's crew was back on the floor for repairs. At approximately 10:05 am, Phillips came to her extremely upset saying Miller was alone with her in the bathroom and told her to "drop her pants and show him her stuff". Phillips told her this was not the first time Miller said this. Phillips also told her that Miller "grabbed her breasts".

A copy of Skrzypczak's signed statement is appended as ATTACHMENT # 13.

20.    Marcia Lazenby, Correctional Employment / Vocational Coordinator
       DOB: 12/17/55

On April 11, 1996, the above employee was interviewed by this investigator at SCI Cambridge Springs where she has been employed for 3 years. She advised the following:

She places inmates into work details within the institution and deals directly with each individual supervisor.

In 1995, she had several incidents of inmates requesting to be removed from Marty Miller's plumbing crew. They would go anywhere else to work, even if it was a demotion. Inmates cried and literally begged for job changes.

Some of the reasons were "he had favorites", "he threatens misconducts and inmates don't have to tolerate that", or "they have investigated him before and nothing was done".

Miller, on one occasion, came to her office and asked what inmates told her.

Once, Jolanda White, OC-3674, came in to complain about Miller's treatment. Within a minute after White entered her office, Miller, in a hostile mood, entered and screamed at White to "tell the truth because he knew what the truth was". At this point, White shut up and left.

On several occasions, Miller would touch her back with a hand or forearm and once brushed her breast with a hand, palm side in.

She was shocked as Miller just continued walking.

18

A 447

44

21.    Diane Anthony, Clerk Typist II
       DOB: 06/10/55

On April 12, 1996, the above employee was interviewed by this investigator at SCI Cambridge Springs where she has been employed for 2 years. She advised the following:

    She works as a secretary in the inmate employment office.

    She would, at times, need to speak with Marty Miller about inmate employment problems. During these interactions, Marty would run his hands up and down her arms and back. This was done in the hallways, the office or wherever a conversation was occurring. It was done in front of other staff and inmates alike.

    She felt uncomfortable and disrespected. She told Miller to stop.

22.    Martin Miller, Plumbing Trades Instructor
       DOB: 06/13/50

On April 11, 1996, the above employee was interviewed by this investigator and Special Investigator Michael Dodson at SCI Cambridge Springs. Also present was AFSCME Representative Fred Wettich. After being advised of his Miranda Warnings, Miller advised the following:

    He is a plumbing trades instructor supervising 6 to 10 female inmates.

    He never has gone on a job or in an inmate bathroom for repairs with less than two inmates.

    He never had any type of relationship, sexual or otherwise, with inmates Sylvia Vasquez, Robin Phillips or any other inmate.

    He never gave LeAnn Jafko, or any other inmate, candy or cigarettes. He never kissed Jafko on the cheek. He did issue a misconduct to Jafko once.

    Inmates have asked him to bring in cigarettes, candy and money but he never has. He brought in candy once but his boss instructed him to take it home.

    He has worked in "Freddy's House" but never alone with an inmate.

    He has never brought in any AVON products for inmates, even though he sells AVON and has the business registered in his name.

    He never asked any inmate to sit between his legs or on his lap.

    He has never exposed his penis to any inmate or asked them to feel it.

19

He never asked inmate Maysonet to open her shirt.

He never touched inmate Colleen Digiovanni on March 22, 1996.

He will not take a polygraph examination because he does not have to prove his innocence.

ACTION TAKEN:

1.    Reviewed LeAnn Jafko's institutional adjustment file.  The review revealed the following:

>    There are no misconducts in her file written by Marty Miller, as Miller claimed.

2.    Review of Martin Miller's personnel file.  The review revealed the following:

>    There is no supplemental employment form for an AVON business in Martin's file.

3.    Polygraph examination performed on Sylvia Vasquez, OC-7919, by Special Investigator Michael Dodson on April 11, 1996.  The examination revealed the following:

>    On April 11, 1996, inmate Sylvia Vasquez voluntarily agreed to polygraph testing.  Her cooperation was voluntary and no promises were made to her.

>    During the testing, four relevant questions were asked.  They are as follows:

>    1.    Did you see Miller's naked penis?
>    2.    Did Miller put his penis in your mouth?
>    3.    Did you touch Miller's penis?
>    4.    Did you tell Miller you did not want to do that sex act with him?

Vasquez's responses to all the relevant questions were indicative of truthfulness.

A copy of Vasquez's polygraph report is appended as ATTACHMENT # 14.

Submitted by:    _Mike Wallace_____

Date:    _____

MW/hr

A 449

20

46

ATTACHMENTS:

1.    Wolfe's Letter

2.    Phillips' Signed Statement

3.    Digiovanni's Signed Statement

4.    Vasquez's Signed Statement

5.    Pehlman's Signed Statement

6.    Streff's Signed Statement

7.    White's Signed Statement

8.    Jackson's Signed Statement

9.    Ferguson's Signed Statement

10.   Jones' Signed Statement

11.   Maysonet's Signed Statement

12.   Jafko's Signed Statement

13.   Skrzypczak's Signed Statement

14.   Vasquez's Polygraph Report

A 450

47

DC-121A
Revised 03-20-95

DEPARTMENT OF CORRECTIONS
EMPLOYEE REPORT OF EXTRAORDINARY OCCURRENCE
(TYPE OR PRINT LEGIBLY)

TO: _V. Kormanic_ TITLE: _Deputy_ DATE: _6-4-97_ TIME: _1500_

FROM: _Magee_ TITLE: _CoI_ LOCATION OF OCCURRENCE: _Cuter-1_

SIGNATURE: _Tryanne Magee_ TYPE OF OCCURRENCE: _Allegations of Staff Fraternizatio_

| Inmates Involved<br>Name and DC Number | Staff Involved<br>Name and Title | Witnesses |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

Complete Detailed Description of Incident (if force is used, include an account of events leading to a use of force, reasons for employing force):

ON 6/3/97 INMATE Pehlman (OC 3351) who is a detail worker, accidently walked in on an officer in the bathroom. She was then reprimanded by this officer & told to be more careful next time. Inmate was extremely upset over this incident & stated to me that it was an accident but people might think she did it on purpose. I told her not to worry just be more careful next time. She then started to cry and said that she had to hit M. Miller with a hammer because he tried to touch her. She was very upset with Miller because he knew she was

Actions Taken (in chronological order with times listed):

_____

_____

_____

_____

_____

_____

_____

_____

(48)    A 451

Page 1 of 2

DC-121A
Revised 03-20-95

DEPARTMENT OF CORRECTIONS
EMPLOYEE REPORT OF EXTRAORDINARY OCCURRENCE
(TYPE OR PRINT LEGIBLY)

TO: V. Kormanic   TITLE: Deputy   DATE: 6-4-97   TIME: 1500

FROM: Magee   TITLE: CO'   LOCATION OF OCCURRENCE: Later-1

SIGNATURE: Suzanne Magee   TYPE OF OCCURRENCE: Allegations of Staff Fraternization

| Inmates Involved Name and DC Number | Staff Involved Name and Title | Witnesses |
|---|---|---|
| Pehlman  OC3351 | | |
| | | |
| | | |
| | | |

Complete Detailed Description of Incident (if force is used, include an account of events leading to a use of force, reasons for employing force):

in a relationship with a Lt. if he still hit on her
She then mentioned that Miller tried to pass her on
to Eicher but she wouldn't do it. She then jumped the
subject to 3 female officers and an inmate in
a bathroom & they tried to set her up. (Pehlman)
Pehlman throughout conversation was crying, Rambling
& incoherent I could only understand bits & pieces.
She was very upset about the bathroom incident
& often makes allegations of having affairs with
staff that no longer work here.

Actions Taken (in chronological order with times listed):

Reviewed
Lt. Miller

CC: Capt. Razenbey

49

A 452

Page 2 of 2