# IN THE UNITED STATED DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA LAMBERT | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 96-247 |
| | ) Judge Sean J. McLaughlin |
| WILLIAM WOLFE; THE ESTATE OF | ) Magistrate Judge Susan Paradise Baxter |
| KEITH BARLETT, JOHN RAUN; | ) |
| JAMES EICHER; and VICTORIA | ) |
| KORMANIC | ) |
| | ) |
| | ) Electronically Filed |

## DEFENDANTS WOLFE'S, ESTATE'S, RAUN'S, AND KORMANIC'S REPLY TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS *NUNC PRO TUNC*

1. It is admitted that Plaintiff was an inmate at SCI-Cambridge Springs at all times relevant to her Complaint.

2. Denied as stated. Eicher was convicted of having sexual relations with Plaintiff. Defendant Raun never had any sexual contact whatsoever with Plaintiff let alone inflicting "sexually tinged assaults" upon her (*See* Deposition of John Raun, attached to the Defendant's Motion for Partial Summary Judgment as Attachment C). When Plaintiff returned to SCI-Cambridge Springs from an unrelated court hearing in the Court of Common Pleas of Lancaster County, Plaintiff was videotaped and photographed in the shower area in her underwear, not naked, pursuant to Department of Corrections policy and because she had lodged frivolous allegations of sexual abuse prior (*See* Brief in Support of Defendants' Motion for Partial Summary Judgment, pp. 18-27)

3. Denied as stated. Raun did not abuse Plaintiff in any way (*See* Deposition of John Raun, attached to the Defendant's Motion for Partial Summary Judgment as Attachment C) Captain Bartlett was the investigator in eight (8) cases involving alleged sexual abuse

of inmates. In four (4) of these investigations, the target of the investigation resigned and left the DOC. In one (1), the case of CO Eicher, criminal charges were filed and the target went to jail. In another, the staff member was fired leaving two (2) allegations of staff misconduct that Bartlett investigated as unfounded (*See* Brief in Support of Defendants' motion for Summary Judgment, pp. 17-18). The Defendants were in no way deliberately indifferent to the safety of SCI-Cambridge Springs inmates (*Id.,* pp. 5-17)

4. Denied (*Id.,* pp. 18-27).

5. Admitted.

6. Denied as stated. A significant number of men were employed at SCI-Cambridge Springs but the citations to her Appendix included in ¶ 6 do not support Plaintiff's contention that was a matter of policy that men could be alone with inmates and that many of the employees had no experience working in a prison setting.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Plaintiff's citations to pp. 2 and 11 of her Appendix are to her complaint. Admitted that Plaintiff states in her complaint that Defendant Wolfe was the Superintendent of the prison while Plaintiff was housed there. Admitted that Plaintiff in her complaint states that Wolfe was responsible for those things listed in ¶ 11. Admitted that Wolfe became the SCI-Superintendent in 1991 but policies and practices were already in effect at SCI-Cambridge Springs and continued throughout Wolfe's tenure

there concerning staff/inmate interaction by the time inmates started to arrive (*See* Brief in Support of Defendants' Motion for Partial Summary Judgment, pp. 9-17)

12. Plaintiff's citations to pp. 3 and 11 of her Appendix are to her complaint. Admitted that in her complaint she claims that Bartlett was the intelligence captain responsible for those things listed in ¶ 12. Denied as to the dates of Bartlett's tenure as intelligence captain. The Appendix cites Plaintiff refers to in ¶ 12 do not contain the dates Bartlett served as the intelligence officer.

13. Admitted.

14-23. Plaintiff's citations in ¶¶ 14-23 are to her own deposition and to her own declaration filed in this case. It is admitted that this is what Plaintiff claims in her deposition and in her declaration.

24. It is admitted that the OSI affidavit of probable cause reads as reflected in ¶ 24.

25. Admitted.

26. Admitted.

27. The Defendants cannot respond as to how her dealings with Eicher affected her.

28-39. Plaintiff's citations in ¶¶ 28-29 are to her own deposition and to her own declaration filed in this case. It is admitted that this is what Plaintiff claims in her deposition and in her declaration.

40. Denied (*See* Brief in Support of Defendants' Motion for Partial Summary Judgment, pp. 7-9).

41. Denied (*Id.*)

42. Denied (*Id.*)

43. Denied. Plaintiff's cites to pages 60-61 of the Appendix do not support the averment in ¶ 43. Deputy Kormanic testified she had no idea of the number of "sexual improprieties" allegations made but she knew it was less than a hundred.

44. Admitted that this reflects Captain Bartlett's deposition testimony.

45. Denied as stated. Attachment D shows that some employees resigned, Wolfe fired others, and in some instances, he had them criminally prosecuted. Wolfe barred CO Eicher from the prison grounds. Any contact with Eicher was to be documented and reported immediately. Wolfe suspended Eicher pending the investigation that Wolfe had put in motion, subsequently fired him, then ultimately had him criminally charged resulting in a one and half (1 ½) to three (3) year period of incarceration.

Wolfe barred Food Service Supervisor Walton from prison grounds. Wolfe suspended Walton pending the investigation that Wolfe had put in motion. He fired Walton, Walton was criminally charged and convicted, and ordered to serve a three (3) to twenty-four (24) month prison term.

Wolfe barred CO Trainee Hammers from prison grounds.

Wolfe barred staff member Miller from prison grounds then fired him. Miller was ultimately criminally charged, convicted, and ordered to serve a three (3) to twenty-four (24) months less one day term of incarceration (*See* Documentation *Re* Wolfe's actions towards Eicher, Walton, and Miller, attached to the Defendants' Motion for Partial Summary Judgment as Attachment N).

46. Admitted.

4

47. Denied as stated. Most orders for the intelligence captain to conduct an investigation ran through the Superintendent but Plaintiff's cite to A 135 does not support her contention that who conducted the investigation was determined at the institutional level.

48. Denied as stated. Bartlett was the intelligence captain, the figures provided in the Defendant's Brief in Support of Motion for Partial Summary Judgment show that there never was a "height" of "abusive incidents" and Defendant Raun never did anything to Plaintiff (*See* Brief in Support of Defendants' Motion for Partial Summary Judgment, pp. 7-9).

49-52. Denied as stated. Plaintiff's statement that Captain Bartlett "was a serial predator" is not a fact but rather Plaintiff's characterization of Bartlett. As Plaintiff admits, a full investigation into Bartlett's alleged misconduct occurred resulting in him being disciplined. On December 17, 1997, Defendant Wolfe informed Bartlett:

> As a result of an investigation conducted in November, 1996 by the Office of Professional Responsibility, you are advised of the following:
>
> Based in all the information presented, you are being given a written reprimand. This action is being taken as a result of unprofessional conduct between yourself, a supervisor, and your subordinates and the fact that despite being previously counseled on similar behavior, you continued this unwarranted practice.
>
> It is imperative that as managers we hold ourselves to a higher standard because staff look to us for guidance, objectivity and trust. By becoming personally involved with staff with whom you have direct disciplinary input/control, you undermine not only your credibility but your ability to perform essential job functions.
>
> You are further advised that continuation of such actions or similar behavior may result in progressive disciplinary action up to an including possible dismissal. (A. 640-641).

5

53. Denied as stated. When one reviews A 698-701 one does not see Commissioner Horne linking Bartlett's behavior to misconduct on the part of SCI-Cambridge Springs personnel. Horne did testify that Bartlett was disciplined by being demoted and transferred.

54. Admitted that this is Commissioner Horne's testimony.

55. Denied. ¶ 55 is not a statement of fact. Instead, it is a "reasonable…infer[ence]" that Plaintiff makes.

56. Denied as stated. The citations to the Appendix do not support Plaintiff's contention that Bartlett acknowledged he received minimal training and had no expertise in conducting internal investigations. Bartlett did state that OSI investigators were better trained as that was their sole function.

57. Denied as stated. Bartlett was trained to *Mirandize* those who may have criminal charged filed against him (A 95-96). The citations Plaintiff includes in ¶ 57 show the deponents testifying that it all depends on the situation as to whether *Miranda* rights are appropriate or not.

58. Denied as stated. *See* # 57, *supra.*

59. Denied as stated. Bartlett was the investigator in eight (8) allegations of staff on inmate sexual conduct. In four (4) of these, the target of the investigation resigned and was no further danger to anyone in the Institution. In one (1), the case of CO Eicher, criminal charges were filed and the target went to jail. In another, the staff member was fired leaving just two (2) allegations of staff misconduct that Bartlett investigated as unfounded. In 75% of the staff on inmate sexual abuse cases Bartlett investigated, the

result was positive for the inmate (*See* Brief in Support of Defendants' Motion for Partial Summary Judgment, pp. 17-18).

60-64. Denied as stated. Wolfe did not openly inform SCI-Cambridge Springs personnel as to the reason why various employees were terminated as that would have been inappropriate. Nevertheless, SCI-Cambridge Spring employees were well aware of employees being fired and the reason for the firing (*Id.,* p. 11). Plaintiff's ¶¶ 60-64 fail to take into account everything Wolfe did do to address allegations of sexual misconduct (*Id.,* pp. 9-17).

65-67. Denied as stated. (*Id.,* p. 17)

68-69. Denied as stated. Regardless of the fact that Plaintiff finds fault with Department of Corrections (DOC) policies when the DOC is not even a Defendant in this matter, A 652-666 show what was required to be reported to OPR/OSI. It does not reflect what was actually reported to OPR.OSI. A 652-666 set the minimum standard, not the maximum standard. ¶ 69 shows the seriousness with which the DOC treated allegations of sexual abuse of inmates even though the numbers at SCI-Cambridge Springs conclusively show a miniscule number of such incidents over a six year period (*Id.,* pp. 7-9).

70. Denied. ¶ 70 is a conclusory statement without any citation to the record.

71-81. Denied as stated. Plaintiff completely ignores the extraordinary steps that Defendant Wolfe did take (*Id.,* pp. 9-17)

82. Admitted.

83. Admitted.

84-88. Denied as stated. (*Id.,* pp. 19-22).

7

89-90. It is admitted that this is what Plaintiff states in her declaration. The Defendants cannot comment on the truth or falsity of Plaintiff's emotions.

91. Denied (*Id.,* p. 20).

92. Denied as stated. As this Court is aware from viewing the tape. The gaps in the tape are for when Plaintiff was showering or getting dressed.

93. Denied as stated (*Id.,* pp. 19-22).

                                                                  Respectfully submitted,

                                                                  **Thomas W. Corbett, Jr.**
                                                                  Attorney General

                              BY:   /s/ Robert A. Willig
                                      ROBERT A. WILLIG
                                      Senior Deputy Attorney General
                                      PA I.D. No. 53581

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

Date:  February 7, 2007

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within Defendants Wolfe's, Estate's, Raun's, and Kormanic's Reply to Plaintiff's Statement of Facts *Nunc Pro Tunc* was served upon the following by ECF this 7th day of February 2007:

Angus Love
Sue Ming Yeh
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304 South
Philadelphia, PA 19106

I hereby certify that a true and correct copy of the within Defendants Wolfe's, Estate's, Raun's, and Kormanic's Reply to Plaintiff's Statement of Facts *Nunc Pro Tunc* was served upon the following via first class mail this 7th day of February 2007:

James Eicher
209 McConnell Road
New Wilmington, PA 16142

/s/ Robert A. Willig
ROBERT A. WILLIG
Senior Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219

Date: February 7, 2007